Ildefonso Ortiz Rivera et al., demandantes y recurrentes, *v.* Sucn. de Manuel González Martínez, demandados y recurridos.

*Número:* R-64-105        *Resuelto:* 8 de junio de 1966

*Francisco Aponte Pérez,* abogado de los recurrentes; *Raúl Matos,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal, en cuanto a la cuestión que se refiere a la caducidad.

Se alega que en el año 1893, don Manuel González Martínez y doña Estefanía Rivera, siendo ambos solteros y sin impedimento alguno para contraer matrimonio el uno con la otra, sostuvieron relaciones concubinarias, de las cuales nació en el pueblo de Salinas, Puerto Rico, el 10 de mayo de 1894, doña Francisca Rivera, considerada por la legislación vigente al momento de su nacimiento, hija natural tanto de don Manuel como de doña Estefanía. Parece que esta hija natural casó con un señor Ortiz, de cuyo matrimonio hubieron dos hijos: Ildefonso Ortiz Rivera, quien nació el 6 de abril de 1923 e Irene Ortiz Rivera, quien nació el 25 de marzo de 1925.

Ha quedado establecido el hecho que durante la minoría ·de edad de doña Francisca, (1894–1915), su madre doña Estefanía no presenta ninguna acción de filiación contra don Manuel González; es indudable, asimismo, que durante la mayoría de edad de doña Francisca (1915–1944) ésta tampoco presenta ninguna acción de filiación contra su presunto padre don Manuel González en vida de éste, ni un año después de muerto su presunto padre: (1944–1945), siendo evidente que a la fecha de la muerte de don Manuel González su presunta hija natural doña Francisca Rivera tenía ya cincuenta años de edad. Al morir doña Francisca el 1ro. de agosto de 1961, sus dos hijos legítimos, Ildefonso Ortiz de treinta y ocho años de edad e Irma Ortiz de treinta y seis años de edad, presentan una acción de filiación contra la Sucesión de don Manuel González Martínez para que se declare a doña Francisca Rivera hija natural de don Manuel

González Martínez. Cuando se presenta el 15 de enero de 1964 esta demanda de filiación, don Manuel González había muerto hacía más de diecinueve años y la madre de los demandantes tenía más de dos años de muerta.

La ilustrada Sala de San Juan dictó sentencia declarando sin lugar la demanda por haber transcurrido el término legal provisto por ley para ejercitar la acción de filiación. La ley aplicable al caso es el Art. 126 del Código Civil de Puerto Rico que dispone: "Las acciones para el reconocimiento de hijos naturales, sólo podrán ejercitarse en vida de los presuntos padres, o un año después de su muerte, salvo en los casos siguientes: (1) Si el padre o la madre hubiesen fallecido durante la menor edad del hijo, en cuyo caso éste podrá deducir la acción antes de que transcurran los primeros cuatro años de su mayor edad. (2) Si después de la muerte del padre o de la madre apareciere algún documento de que antes no se hubiese tenido noticia, en el que reconozcan expresamente al hijo. En este caso la acción deberá deducirse dentro de los seis meses siguientes al hallazgo del documento . . . ."

En su solicitud ante nos, entre otros que no guardan correspondencia con la cuestión litigiosa envuelta, los presuntos nietos naturales aquí demandantes recurrentes, alegan la comisión de dos errores: (1) haber resuelto la ilustrada Sala sentenciadora que la acción de filiación en este caso está prescrita o ha caducado; (2) que el Art. 126 del Código Civil de Puerto Rico de 1930 rige todavía en Puerto Rico, a pesar de la reforma Constitucional del 1952. Es nuestro criterio que las acciones para el reconocimiento del hijo natural están sometidas todas a caducidad, o sea, a extinción por el simple transcurso del término establecido por ley para su ejercicio y no están regidas por las disposiciones de la prescripción. Trataremos de exponer la naturaleza de dicha institución, antes de establecer la diferencia entre la "caducidad" y la "prescripción". No por más compendiada

menos valiosa, incluiremos en primer término la glosa sobre "caducidad" del *Diccionario de Derecho Privado*: "El tiempo, medida del movimiento según Aristóteles, es un hecho jurídico de influencia decisiva en las relaciones jurídicas y que, en concreto, es factor determinante de la perdurabilidad de los derechos subjetivos, en los que, como exponía Savigny, actúa de modo directo. La existencia de derechos que sólo en un determinado espacio temporal pueden ejercitarse, nos lleva a la consideración de la *caducidad* . . . . En un sentido menos general, pero lo suficiente amplio para manifestar su esencia, se entiende por *caducidad* la decadencia de un derecho o la pérdida del mismo por no haber cumplido, en el plazo determinado, la formalidad o condición exigida . . . . Guarda estrecha relación la institución que analizamos con la prescripción extintiva . . . . El resultado, a que, en este orden, se ha llegado en la doctrina científica actual no es ni preciso ni satisfactorio, pues sólo a través de generalizaciones comparativas se pueden presentar como diferencias de esencia que indican el lugar en que debe colocarse la línea de separación entre las dos instituciones mencionadas para hacer de la caducidad una institución autónoma, las siguientes: (a) *Por el origen*, la causa de caducidad puede ser convencional o legal. La de la prescripción es siempre legal. (b) *Por el ámbito* la caducidad se extiende preferentemente a los llamados derechos potestativos, esto es, a derechos determinados cuyo ejercicio ha de tener lugar en breve espacio temporal. En cambio, la prescripción se extiende a los derechos subjetivos, en general. (c) *Por el modo de operar*. La caducidad produce la extinción del derecho automáticamente y de modo directo. En cambio, la prescripción produce la extinción de los derechos, sólo a través de una excepción. (d) *Por la apreciación*, el plazo de caducidad ha de tomarse en cuenta por el Juez, aunque sólo se desprenda su transcurso de la exposición del demandante. La prescripción, en cambio, sólo se apreciará cuando la invoque el demandado, según expone Ennecerus.

(e) *Por la persistencia.* En la caducidad teniendo en cuenta el modo automático y directo de operar la extinción, no se dan, normalmente causas de interrupción y suspensión de la misma; en la prescripción, sí. (f) *Por la finalidad,* la caducidad tiene una finalidad de concreción, en cuanto que tiende a determinar previamente el tiempo en que puede ejercitarse un derecho (obedece a impulsos de una razón objetiva). La prescripción teniendo en cuenta el no ejercicio de los derechos o acciones y su posible abandono por aquel a quien corresponde dicho ejercicio, desemboca en la extinción de aquellos (obedece a una razón subjetiva). (g) *Por la relación con el sujeto.* Apoyando la diferenciación en esta nota, se ha dicho por Messineo que la caducidad o decadencia supone la existencia de un derecho cuya adquisición por el titular no llega a verificarse, mientras que la prescripción se refiere a un derecho ya adquirido, pero cuya falta de ejercicio determina su extinción."

"Independientemente de estas diferenciaciones, venidas de diversos campos de la doctrina, es preciso mencionar otras de elaboración jurisprudencial en el Seno de nuestro Derecho patrio, que resumen, en cierto modo, las orientaciones que han de tomarse en consideración cuando se pone en relación comparativa el instituto de la prescripción con la institución de la caducidad. Tales notas diferenciales entre una y otra son las siguientes: (a) Mientras que la caducidad encuentra su fundamento exclusivo en la necesidad de dar seguridad al tráfico jurídico, operando por el mero transcurso del tiempo, la prescripción se apoya en la necesidad de resolver la incertidumbre de los derechos y en una presunción de abandono por el titular. (b) Mientras que la caducidad puede ser apreciada tanto a instancia de parte como de oficio, por el Tribunal, la prescripción es estimable solamente a instancia de parte. (c) Mientras que la caducidad no admite, en ningún caso, la interrupción del tiempo, operando el transcurso del mismo como origen de ella, la prescripción es susceptible de in-

terrupción, en virtud de un acto realizado por el sujeto, que puede resultar perjudicado por ella. Pese a estas caracterizaciones, ha de tenerse en cuenta que si de las innegables imprecisiones de nuestra doctrina científica, pasamos a examinar, siquiera de modo somero, las normas del primer texto legal español, podremos apreciar, como dice Castán, la no menos imprecisa técnica de nuestro Código Civil en el que algunas veces se emplea, simplemente la expresión caducidad, y otras, establece casos de caducidad sin darles este nombre . . . . Sin embargo, Pérez González y Alguer, De Buen y otros tratadistas, al estudiar las diferencias entre caducidad y prescripción, señalan en nuestro Código Civil preceptos en que se regulan casos concretos de caducidad sosteniendo su valor como tales y colocándolos en lugar diferenciado del que ocupan los que dicho cuerpo legal establece como de prescripción de modo inequívoco. En este sentido señalan como plazos de caducidad los siguientes: (a) Los relativos a las acciones de nulidad de matrimonio. (b) Los que se refieren a las acciones de impugnación de la legitimidad. (c) *Los establecidos para ejercitar la* acción de reclamación de la legitimidad. (d) El de la acción de impugnación de reconocimiento por el menor reconocido . . . ." En la enumeración de los artículos del Código Civil de España que corresponden a los plazos de caducidad señalados, el *Diccionario de Derecho Privado* incluye el Art. 137 del Código Civil de España (Art. 126 de Puerto Rico) que disponen: "Las acciones para el reconocimiento de hijos naturales sólo podrán ejercitarse en vida de los difuntos padres, (o un año después de su muerte según nuestro Código) salvo en los casos siguientes: (a) Si el padre o la madre hubieren fallecido durante la menor edad del hijo, en cuyo caso éste podrá deducir la acción antes de que transcurran los primeros cuatro años de su mayor edad, y (b) si después de la muerte del padre o de la madre apareciere algún documento de que antes no se hubiese tenido noticia, en el que reconozcan expresamente al hijo. En

este caso, la acción deberá deducirse dentro de los seis meses siguientes al hallazgo del documento." Vide: *Diccionario de Derecho Privado* (Apéndice) Ed. Labor 1963, págs. 178–180.

Fijando el concepto de la caducidad y las diferencias que la separan de la prescripción, Castán se expresa así: "Relaciónase estrechamente la prescripción con la institución llamada caducidad o decadencia de derechos, que tiene lugar cuando la ley o la voluntad de los particulares señalan un término fijo para la duración de un derecho, de tal modo que transcurrido ese término no puede ya ser ejercitado (1) — (1) Huc (en su *Commentaire du Code civil*) dice que la decadencia es la pérdida de una facultad, de un derecho o de una acción resultante únicamente de la expiración de un término extintivo concedido por la ley para el ejercicio de ese derecho, de esa acción o de esa facultad.—Las diferencias más importantes—aunque sean relativas y todavía poco precisadas por la doctrina—entre la prescripción y la decadencia son las siguientes: 1ª La decadencia puede proceder del acto jurídico privado o de la ley, mientras que la prescripción tiene siempre su origen en la última . . . . 2ª La finalidad de la prescripción—dice Coviello—es dar por extinguido un derecho que, por no haber sido ejercitado, se puede suponer abandonado por el titular; la de la decadencia, es fijar de antemano el tiempo durante el cual puede un derecho ser ejercitado útilmente (4) — (4) Messineo apunta que la prescripción supone un derecho ya adquirido, que se extingue por falta de ejercicio, mientras que la decadencia implica un derecho que no llega a ser adquirido.—En la prescripción, por ello, se toma en consideración la razón subjetiva del no ejercicio del derecho, o sea la negligencia real o supuesta del titular; en la caducidad pura se atiende sólo al hecho objetivo de la falta de ejercicio dentro del término prefijado. 3ª La prescripción se aplica a los derechos subjetivos *en general,* cuando menos a los patrimoniales; la caducidad se refiere a derechos *determinados*—por lo común, los llamados dere-

chos potestativos (5) — (5) 'La caducidad—dice Albaladejo —se aplica generalmente no a los derechos, propiamente hablando, sino a las facultades o poderes jurídicos cuyo fin es promover un cambio de situación jurídica (por ejemplo, al poder de impugnar un contrato o el matrimonio o un *estado de filiación etcétera*), tengan o no carácter patrimonial, mientras que la prescripción se aplica a los derechos patrimoniales (*Instituciones*, t. I, núm. 206, pág. 482)'— que, no sólo en razón del interés general, sino también su atención al interés de sujetos particulares, quiere la ley que se ejerciten en un término breve. 4ª La prescripción extingue las acciones y derechos, generalmente a través de una excepción, mientras que la caducidad opera la extinción de una manera directa y automática. De aquí que diga Enneccerus . . . que en el plazo de caducidad ha de tomarse en cuenta por el Juez, aunque sólo se desprenda su transcurso de la exposición del demandante; la prescripción, en cambio, sólo cuando la invoque el demandado. 5ª En la prescripción se admiten causas de suspensión y de interrupción. En la decadencia, no tienen influencia, por lo general, estas causas, porque el efecto extintivo es radical y automático . . . . En puridad, la técnica imprecisa de nuestro Código civil, y aún de nuestra doctrina científica (todavía poco elaborada en este punto), no permiten trazar con seguridad el deslinde entre los casos de prescripción y los de caducidad. Pero hay motivos para sostener, de una manera aproximada—como lo hacen ilustres escritores (1) — (1) Pérez González y Alguer, Notas t. I, Vol. 2° pág. 192; De Buen, *Derecho civil común*, 3ª ed., t. I, pág. 132, nota—, que son plazos de caducidad y no de prescripción los referentes a las acciones de nulidad del matrimonio (art. 102, ap. 3°), de impugnación de la legitimadad (art. 114), de reclamación de la legitimidad (art. 118) de impugnación del reconocimiento por el menor reconocido (art. 137)." Vide: Tomo I, Vol. 2, Castán—*Derecho Civil Español, Común y Foral*, págs. 850–854 (ed. Reus 1963).

Según Santamaría, la caducidad o decadencia de los derechos no debe confundirse con la prescripción, aunque en determinados casos sea difícil establecer una distinción neta entre ellas. Citamos: "La caducidad tiene lugar, dice Castán en términos análogos a Coviello, cuando la ley o la voluntad de los particulares han señalado un término fijo para la duración de un derecho, de tal modo que transcurrido este término, no puede ya ser ejercitado. El criterio diferencial entre ambos institutos, prescripción y decadencia, no resulta muy claro, expresa Barassi, pero puede decirse que cuando la ley ha establecido que un determinado acto, que representa la actuación de un derecho, sea ejercitado dentro de un tiempo dado", [como en el caso del Art. 126 del Código Civil de Puerto Rico que establece:—'Las acciones para el reconocimiento de hijos naturales, *sólo podrán ejercitarse* en vida de los difuntos padres o un año después de su muerte]—"este término es el punto de partida de la extinción del derecho de caducidad, a diferencia de la prescripción en que se parte del hecho de la falta de ejercicio del derecho. Una vez ejercitado el derecho en tiempo, queda evitada la caducidad, pero el sujeto puede luego perderlo por la prescripción si su ejercicio quedó paralizado durante el tiempo preciso para ello (Messineo I, 195). En cuanto a su eficacia la decadencia, contrariamente a lo indicado antes para la prescripción, ha de estimarse *ex officio judicis*, pues constituye un presupuesto negativo del derecho; y no se interrumpe, porque no está basada en la presunción de abandono del derecho." Vide II J. Santamaría—*Comentarios al Código Civil*—págs. 1013–1014 (ed. Revista de Derecho Privado 1958).

En la misma glosa de Santamaría aparecen incluidas algunas sentencias del Tribunal Supremo de España que detallan diversos pormenores de la cuestión propuesta: "La prescripción y la caducidad que, no bien definidas legalmente, producen, por responder a igual presunción de abandono, el mismo efecto extintivo y tienen la común finalidad de im-

pedir que permanezcan indefinidamente inciertos los derechos, ofrecen, como nota que de modo acusado las distingue, la de que mientras la prescripción es renunciable, por lo que sólo cuando se alega puede ser estimada, la caducidad opera por sí misma, obligando al juzgador a declararla de oficio, según se ha declarado entre otras sentencias en la de 30 abril 1940 (S. 7 de diciembre de 1943) y no tratándose de un término de prescripción propiamente dicho, sino de un plazo preclusivo o de caducidad, no cabe aplicar la doctrina relativa a los diferentes modos de interrumpir la prescripción de las acciones (S. 10 marzo 1942). Si bien es cierto que en el Código Civil no existe la debida distinción entre 'caducidad' y 'prescripción' también lo es que la doctrina jurisprudencial las viene diferenciando, entendiendo (SS. 27 abril 1940 y 25 septiembre 1950) que *cuando se otorga un tiempo determinado para el ejercicio del derecho, se está en presencia de un plazo de caducidad,* pasado el cual el derecho deja de existir, y sí debe ser proclamado de oficio, mientras que por el contrario, la prescripción hace referencia tan solo a las pretensiones que las partes pueden deducir, no a los derechos que les afectan, quedando éstos sólo paralizados mediante la excepción que se promueve y que sólo cabe admitir cuando la parte expresamente la articula (S 5 julio 1957)." (La glosa anterior está recogida, con anterioridad a esta exposición en el caso de *Eisele* v. *Orcasitas,* 85 D.P.R. 89 (Per Curiam) (1962) cita precisa a las págs. 92–94.)

■ Según Puig Peña: La caducidad "es aquel instituto jurídico por virtud del cual, una vez expirado el plazo, que o bien la ley o bien la voluntad de los particulares establecen o asignan a la acción, ésta ya no puede ser ejercitable en modo alguno. En la decadencia el tiempo tiene un influjo decisivo y extintivo, pero actúa a modo de plazo únicamente, sin tener en cuenta la negligencia o imposibilidad del titular del derecho . . . . La doctrina antigua confundió la prescripción con otras figuras jurídicas, cuya esencia era el influjo

del tiempo en las relaciones de derecho, hasta que más tarde se diferencian técnicamente los conceptos. En el Derecho alemán se ha exagerado mucho esta tendencia separatoria. En los Derechos francés, italiano—y en el español—la discusión se plantea sobre la diferencia entre prescripción y decadencia, que éste es el nombre que se le da en las doctrinas italianas y francesas, a diferencia de la alemana, que la llama temporalidad de derecho o plazos legales . . . . Las diferencias más importantes entre prescripción y caducidad (o decadencia) son las siguientes: 1ª La caducidad puede proceder de acto jurídico privado o de la ley, mientras que la prescripción tiene siempre su origen en la ley. 2ª La finalidad de la prescripción, dice Coviello y recoge Castán, es dar por extinguido un derecho que, por no haber sido ejercitado, se puede suponer abandonado por el titular; la de la decadencia es fijar de antemano el tiempo durante el cual puede un derecho ser ejercitado útilmente. 3ª La prescripción admite causas de suspensión y de interrupción. En la decadencia no tienen influencia estas causas, porque el efecto extintivo es radical y automático. Los tratadistas, fundándose en estas consideraciones, señalan los siguientes efectos jurídicos de la distinción: 1° La prescripción funciona siempre como excepción y sólo el demandado y no el Juez puede hacerla valer en juicio . . . En cambio, la decadencia impide el nacimiento del mismo derecho y puede ser tomada en consideración por él ex oficio, sin necesidad de que la alegue ningún demandado. 2° Mientras la acción en camino de prescribir puede quedar sujeta a un nuevo término de prescripción esto no sucede con la caducidad, la cual no puede revivir una vez se ha incurrido en ella. 3° La prescripción no corre contra todos en aquellas legislaciones que admiten el principio *contra nom valentem agere non currit praescriptio*, mientras que la decadencia corre contra todo el mundo": T. I, Vol. II Puig Peña—*Tratado de Derecho Civil Español*—453–455. (ed. Revista de Derecho Privado 1958).

El ilustrado profesor de la Facultad de Derecho de la Universidad de Puerto Rico Guaroa Velázquez, al establecer la diferencia entre la "caducidad" y la "prescripción", se expresa en los siguientes términos: "Los plazos de caducidad y de prescripción tienen un rasgo común: en unos y en otros el transcurso del tiempo afecta el derecho o la prerrogativa; además, sus efectos son muy similares: la expiración del plazo entraña la extinción del derecho o la prerrogativa, y, por el contrario, el cumplimiento del acto o el ejercicio de la acción en tiempo útil salvaguarda su existencia. Pero se diferencian en un punto capital. Mientras la prescripción se dirige a la consolidación de un estado de hecho, contrario al derecho la caducidad conduce, por el contrario, a reforzar un estado de derecho preexistente, substrayéndolo a toda controversia, aun cuando tal estado de derecho fuese contrario a los hechos. Así, pasado el plazo del año que el art. 126 concede para establecer la filiación natural, el hijo, no obstante ser hijo natural conforme a los hechos, no puede ya controvertir la situación de derecho que preexistía, o sea, la de que el padre no era tal desde el punto de vista jurídico. La caducidad difiere, por otra parte, de la prescripción, por el fin que persigue. Mientras la prescripción es, ante todo, una institución destinada a asegurar la paz social por lo cual funciona en un interés superior al de las partes en presencia, la caducidad que afecta al titular de un derecho o de una prerrogativa opera con el designio de salvaguardar y proteger los intereses de la persona contra quien este derecho o esta prerrogativa pueden ser ejercitados, o sea, más ampliamente, salvaguardar y proteger los intereses que representa el beneficiario de la caducidad. La caducidad, en la hipótesis del art. 126, tiene como propósito únicamente salvaguardar o proteger intereses particulares, los de los herederos del padre natural. Puesto que la caducidad es una institución distinta de la prescripción, obedece a reglas diferentes. Así, las reglas concernientes a la interrupción de la prescripción no son

aplicables a la caducidad. Veamos como se pronuncia la doctrina sobre este punto. *Rotondi*: Como en materia de caducidad, 'la pretensión surge *ab origene*, provista de una efímera posibilidad de actuación, cualquiera que sea el motivo por el que la pretensión no se verifique, transcurrido el término cesa la posibilidad de efectuarla. Consecuencia importante es que no se admite respecto a ella ninguna causa de suspensión o de interrupción, si el derecho no se ha ejercitado. La decadencia sólo se evita mediante el cumplimiento del acto previsto por ley.' *Coviello*: Causa la extinción del derecho en la hipótesis de la prescripción, es la negligencia del sujeto del mismo prolongada por cierto tiempo; en cambio, en la hipótesis de la caducidad esa causa consiste en el transcurso inútil del tiempo señalado. De aquí se sigue que las causas de suspensión de la prescripción no valen para suspender el término de la caducidad, pues si valen para suspender la prescripción es sólo en atención a la imposibilidad o dificultad de obrar, causas que no permiten imputar al titular la nota de negligente; pero no pudiendo destruir el hecho objetivo del no ejercicio del derecho, no pueden impedir el transcurso del término de la caducidad. Ni las causas que sirven para interrumpir el curso de la prescripción, pueden producir el mismo efecto tratándose de la caducidad. *Josserand*: 'Los plazos prefijados se rigen por un estatuto completamente distinto del que rige la prescripción. 1° No comportan ni suspensión ni interrupción; por definición misma, son preconstituidos y se cumplen en el día dicho, aunque sea un día feriado, sin que esta pérdida pueda ser conjurada o diferida, ni por razón de un caso de fuerza mayor.' *Ripert y Boulanger*: 'Los plazos prefijados difieren de la prescripción por su fin. Difieren también en que no son susceptibles de ser ampliados ni por una causa de suspensión ni por un acto interruptivo.' *Dalloz*: 'Las reglas de suspensión y de interrupción de la prescripción no se aplican a las caducidades . . . .' Es obvio que el actual artículo 126 del Código Civil

prefija un plazo—un año a contar de la muerte del padre—para demandar el reconocimiento de un hijo natural. Este plazo es una típica caducidad . . . ." Guaroa Velázquez:—*La Extinción de la Acción de Filiación en el Derecho Puertorriqueño*—Vol. XVII, Núm. 4 Rev. C. Abo. P.R. 237—(Agosto 1957), cita precisa a las págs. 247-249.

■ Mientras en la Jurisprudencia Civil del Tribunal Supremo de España, ha habido un lento pero progresivo desarrollo del concepto jurídico de la caducidad—véanse, por ejemplo, la Sentencia del 29 de octubre de 1928, 185 Jurisprudencia Civil 645 (ed. Reus 1930) cita precisa a la pág. 650; las Sentencias del 27 de abril de 1940 y del 30 de abril de 1940, Tomo VII, Aranzadi *Repertorio de Jurisprudencia* 303-304 (ed. Aranzadi de Pamplona); la Sentencia del 24 de enero de 1947, 17 Jurisprudencia Civil 322 (ed. Reus 1948) cita precisa a la pág. 343; la Sentencia del 25 de septiembre de 1950, 31 Jurisprudencia Civil 1003 (ed. Reus 1953) cita precisa a la pág. 1010; la Sentencia del 5 de julio de 1957, 62 Jurisprudencia Civil 269 (ed. Reus 1960) cita precisa a la pág. 269—en la Jurisprudencia Civil del Tribunal Supremo de Puerto Rico algunas veces en el pasado y alguna que otra vez en el presente se ha confundido el término de caducidad con el de prescripción y se ha empleado el término legislativo "sólo podrán ejercitarse" del Art. 126 de nuestro Código Civil como algo distinto a la "caducidad", cuando en realidad de Derecho son la misma cosa. El resultado de este uso arbitrario de los distintos términos jurídicos sin diferenciarlos arroja el siguiente resultado: En *Gual* v. *Bonafoux*, 15 D.P.R. 559 (Hernández, Presidente) (1909) a las págs. 568-569 se establece que el caso de *prescripción* en la acción de reconocimiento de hijos naturales, "sólo ha podido ejercitarse en el tiempo que marca el artículo 137 del Código Civil español, aplicables al caso, es claro que la *acción desaparece y queda extinguida transcurrido el tiempo señalado para su ejercicio*. Al señalar dicho Código tiempo cierto y

determinado para el ejercicio de la acción de reconocimiento, parece como que quiso evitar incertidumbres y amenazas que pudieran perturbar la paz y sosiego de la familia . . . . De propósito hemos tratado la presente cuestión a la luz de los preceptos del antiguo Código español, pues al publicarse el Código revisado, ya los demandantes habían perdido todo derecho al reconocimiento que hoy pretenden; pero si examinamos los preceptos del Código Civil revisado con relación a la materia, no es más favorable la situación de los demandantes. Los artículos 198 y 199 de dicho Código dicen: 'Artículo 198—La filiación de los hijos se prueba por el acta del nacimiento extendida en el registro civil, por la posesión del estado de la filiación, o por cualquier otro medio legal. Artículo 199—La acción para reclamar su filiación dura hasta dos años después de ser el hijo mayor de edad, y se transmitirá a sus herederos si falleciere en la menor edad o en estado de demencia. En estos casos tendrán los herederos cinco años de término para entablar la acción.' " Como se ve, aunque se emplea la palabra "prescripción", todo el sentido del texto se refiere a la "caducidad". El caso de *Amsterdam* v. *Puente*, 16 D.P.R. 554 (Wolf) (1910) cita precisa a las págs. 559 y 563–565, es parecido al anterior, pues aunque se emplea del término "prescripción" lo que tiene en mente el ilustrado Juez Ponente es la extinción por caducidad del término: "No creemos que este caso pueda diferenciarse esencialmente del caso de *Gual* v. *Bonafoux*, ya se estime que el término para establecer la acción es una condición precedente o un término ordinario de prescripción . . . . Los demandantes tuvieron ese derecho durante el tiempo marcado por uno u otro cuerpo legal y por no haberlo ejercitado oportunamente la acción ha *prescrito*. Hay otras razones para creer que la intención de la legislatura fuera la de limitar el derecho de acción. Si tal limitación no se estableciera, no habría en la Isla de Puerto Rico seguridad en los bienes procedentes de una persona fallecida. Nada menos que un

término de prescripción expresado en el Título XVIII Libro 4° del Código Civil, podría evitar que una madre poco escrupulosa alegara que su hijo era hijo natural de una persona fallecida, y con derecho, por tanto, a participar de sus bienes . . . . Es inconcebible que aquellas Legislaturas desearan abrir las puertas a tales abusos con respecto a los derechos de propiedad después de muertos los padres . . . la cuestión relativa a la prescripción de la acción debe ser resuelta en favor de la intención del legislador, bien con arreglo al art. 137 del Código Civil español, bien con arreglo al artículo 199 del Código revisado y en ese caso, todo hijo natural, cualquiera que fuera su condición, *que no hubiere ejercitado su acción oportunamente*, se encontraría desposeído para siempre del derecho de ejercitarla. Creemos que los derechos de los demandantes quedaron *prescritos* con arreglo a los textos legales citados . . . ."

Como se sabe, el Art. 137 del Código Civil español de 1889 hecho extensivo a Puerto Rico en el 1889 disponía: "Las acciones para el reconocimiento de hijos naturales sólo podrán ejercitarse en vida de los presuntos padres, salvo en los casos siguientes: 1° Si el padre o la madre hubiesen fallecido durante la menor edad del hijo, en cuyo caso éste podrá deducir la acción antes de que transcurran los primeros cuatro años de su mayor edad, 2° Si después de la muerte del padre o de la madre apareciere algún documento de que antes no se hubiese tenido noticia, en el que reconozcan expresamente al hijo. En este caso, la acción deberá deducirse dentro de los seis meses siguientes al hallazgo del documento."

El caso de *Escobar* v. *Escobar et al.*, 16 D.P.R. 590 (Wolf) (1910), cita precisa a la pág. 591, se resolvió lo mismo que los dos anteriores como si se tratara de una cuestión de "prescripción", pero el principio utilizado para disponer del caso es uno de "caducidad del plazo" y no de prescripción, pues la prescripción queda siempre sometida a la voluntad del perjudicado por ser un derecho subjetivo, pudiendo incluso ser renunciado, contrario a la caducidad que es un derecho

objetivo provisto por ley. Igual comentario podría hacerse del caso de *Rijos* v. *Folgueras et al.*, 16 D.P.R. 624 (Del Toro) (1910) cita precisa a la pág. 625: "No apareciendo que la demandante fuera reconocida por su padre de una manera auténtica y fehaciente, ni que se ejercitara por ella la acción de filiación hasta iniciarse este pleito, es bien claro que su derecho, si es que lo tuvo, para obtener la declaración judicial de su reconocimiento como hija natural, había *prescrito* al tiempo de interponerse la demanda por *ministerio de la ley* . . . ." Como hemos visto la caducidad opera siempre en virtud de un plazo preclusivo fijado por ley. Con menos claridad se resuelve el caso de *Calaf et al.* v. *Calaf*, 17 D.P.R. 198 (Hernández, Presidente) (1911) cita precisa a las págs. 213–216: "La excepción de prescripción a la acción de reconocimiento es alegable, aunque se trate de reconocimiento de hijos naturales nacidos bajo el régimen de la Ley de Toro . . . . La acción de reconocimiento de Juan Ramón Calaf ha quedado 'extinguida por *prescripción*' ya se atienda al artículo 137 del Código Civil español, ya se aplique el 199 del revisado. Pero aún admitiendo que ni los preceptos del Código Civil español ni los del revisado, que regulan la duración de la acción de reconocimiento sean aplicables al presente caso, siempre tendríamos que la ley 63 de Toro fija 20 años para la prescripción de las acciones personales, de cuyo carácter participa la de reconocimiento filiación. No encontramos en la legislación vigente en la fecha en que nació Juan Ramón Calaf precepto alguno que exceptúe de la *prescripción* la acción de reconocimiento, la que tampoco vemos sea imprescriptible por su naturaleza; y gran perturbación se originaría, si así fuera, en el seno de las familias, porque entonces los descendientes en cualquier grado, de un hijo natural con derecho al reconocimiento, podrían ejercitarlo contra los causahabientes de ese hijo natural."

Es desde el 1912 que empieza a concretarse en nuestra jurisprudencia civil el concepto jurídico de la "caducidad".

En el caso de *Jesús* v. *Sucesión Pérez Villamil*, 18 D.P.R. 403 (1912) cita precisa a la pág. 405 se exponen los siguientes hechos: "la demandante nació en 19 de noviembre de 1880, fue mayor de edad en igual día y mes del 1901 en que cumplió los 21 años que para la mayoría de edad exige el artículo 317 del mismo Código, y no ejercitó la acción de filiación hasta el 30 de agosto de 1911, fecha de la demanda. Su acción había *caducado* o se había extinguido por el transcurso del término que la ley previene . . . . Inútilmente invoca Isabel de Jesús en su defensa la ley número 73 aprobada en 9 de marzo de 1911, según la cual las acciones para el reconocimiento de hijos naturales no sólo podrán ejercitarse en vida de sus padres, sino un año después de su muerte. Esa ley no se aplica al presente caso, porque en esa fecha había *caducado* ya la acción de filiación con arreglo al artículo 199 del Código revisado, y ella no puede dar vida a un derecho ya muerto . . . ." Para explicar la aplicación de nuestro Código Civil revisado de 1902, el Tribunal, dice: "Con arreglo al Código Civil Español, Isabel de Jesús podía ejercitar la acción de reconocimiento mientras viviera su padre. Ese término se le redujo a dos años por el Código Civil revisado, a contar desde su mayoría de edad. No obstante encontrarse en condiciones de poder ejercitar dicha acción desde la vigencia de dicho Código, lejos de hacerlo así, ha venido a ejercitarla cuando ya había *caducado* por el transcurso del tiempo marcado por la ley." Igual razonamiento en cuanto a la "caducidad" tiene el caso de *Questel* v. *Conde et al.*, 18 D.P.R. 752 (Aldrey) (1912) cita precisa a las págs. 755–757: "Mas como durante ese tiempo no se formuló la demanda, sino ocho años después, surge ahora la cuestión de si su derecho *caducó* de tal manera que no pueda fundarse legalmente una sentencia a su favor por falta de hechos determinantes de una causa de acción, a pesar de que los demandados no alegaron a su favor la prescripción de la acción, y antes al contrario, se allanaron a las pretensiones del demandante. La contesta-

ción a esta cuestión dependerá de la naturaleza del precepto legal contenido en el artículo 137 citado . . . . Esta Corte Suprema tiene una opinión arraigada de que tanto con arreglo al artículo 137 del Código Civil Español como del 199 del Revisado, el tiempo para ejercitar la acción de reconocimiento *dura sólo el tiempo fijado por la ley.* Así, pues, al vencimiento de esos términos, *caduca* ipso facto el derecho y no puede revivir . . . cuando, como hemos dicho, el derecho *caduca* al vencer el término que se concedió por la ley para ejercitarlo, aunque el demandado no alegue la prescripción, no por eso tendrá el demandante una causa de acción." Igual criterio se sigue en el caso de *Roble* v. *Sucesión Pérez*, 18 D.P.R. 929 (Hernández, Presidente) (1912) cita precisa a las págs. 931 in fine y 932: "La ley de 9 de marzo de 1911 no es aplicable al presente caso, porque en esa fecha había caducado ya la acción de filiación, con arreglo al artículo 199 del Código Civil Revisado, y aquella ley no puede dar vida a un derecho ya muerto. Así lo dijimos al resolver el caso ya citado de Isabel de Jesús y Sucesión de Ramón Pérez Villamil sobre filiación" y en el caso de *Osorio* v. *Sucn. Pérez*, 18 D.P.R. 932 (Aldrey) (1912) cita precisa a la pág. 933.

En el caso de *Santiago* v. *Sucesión Matta*, 19 D.P.R. 169 (Aldrey) (1913) cita precisa a las págs. 170–171 nos enfrentamos otra vez a la cuestión constitucional si la enmienda que sufre el anterior Art. 137 del Código Civil español en virtud del Art. 199 del Código Civil Revisado de Puerto Rico del año 1902, menoscaba los derechos adquiridos por los hijos naturales en virtud de la reducción del término extintivo de la acción: "La apelante nacida en el 1860 radicó su demanda en 29 de abril de 1911, cuando ya Teodosio Matta de quien alega ser hija natural reconocida, había fallecido tres meses antes y la única cuestión que suscita en este recurso, es la de que el artículo 199 del Código Civil Revisado, es contrario a la Constitución de los Estados Unidos si se

aplica a casos como el que motiva el recurso. La demandante, nacida bajo el imperio de la Ley 11 de Toro, no ejercitó entonces su acción de filiación; en 1890 empezó a regir en esta Isla el Código Civil español que en su artículo 137 dispuso que las acciones para el reconocimiento de hijos naturales sólo podrían ejercitarse en vida de los presuntos padres, salvo que el padre o la madre hubieran fallecido durante la menor edad del hijo, en cuyo caso éste podría entablar su acción antes de que transcurrieran los primeros cuatro años de su mayor edad; y salvo además si después de la muerte del padre o de la madre apareciere algún documento de que antes no se hubiese tenido noticia, en el que reconozcan expresamente al hijo, en cuyo caso la acción habría de establecerse dentro de los seis meses siguientes al hallazgo del documento. Tampoco durante la vigencia de este precepto legal ejercitó la demandante su acción. En 1902 comenzó a regir en esta Isla el Código Civil revisado, cuyo artículo 199 modificó el 137 antes citado y dispuso que la acción para reclamar la filiación duraría hasta dos años después de ser el hijo mayor de edad y se transmitiría a sus herederos si falleciere en la menor edad o en estado de demencia, en cuyos casos los herederos tendrían cinco años de término para entablar la acción. Así, pues, la demandante, hasta 1902, pudo haber ejercitado su acción, de acuerdo con el artículo 137 del Código español, puesto que su presunto padre natural vivía entonces, y si bien el artículo 199 del Código Civil revisado lo modificó en el sentido de conceder solamente dos años después de haber llegado el hijo a la mayor edad, y aún cuando la demandante era mayor de edad cuando tal precepto se promulgó, no se le privó de su derecho a ejercitar la acción toda vez que esos dos años para los que entonces eran mayores de edad, debían contarse desde que comenzó a regir el código y no antes, y no afectaba tal precepto únicamente a los menores de edad, sino también a los mayores en la forma dicha. Según resolvimos en el caso de *Jesús* v. *Sucesión Pérez Villamil*, 18 D.P.R. 403.

También en este caso y en otros que citaremos ha resuelto ya este Tribunal Supremo que no es contrario a la Constitución de los Estados Unidos un estatuto que limita o acorta el término concedido para el ejercicio de una acción, si da un tiempo razonable para el ejercicio de la misma, antes de que el impedimento empiece a tener efecto. Véanse los casos que en esa resolución citamos y también nuestras sentencias en los casos de *Calaf et al.* v. *Calaf*, 17 D.P.R. 198, el de *Gual* v. *Bonafoux*, 15 D.P.R. 559 y el de *Rijos* v. *Folgueras*, 16 D.P.R. 624. No es, por tanto, inconstitucional el artículo 199 del Código Civil revisado, ya que concedió a la demandante dos años para ejercitar su acción contados desde que empezó a regir tal precepto, período de tiempo que encontramos ser razonable, sin que nada se haya alegado en contrario respecto a este particular."

Algunos casos vuelven a usar indistintamente los términos de "prescripción" y "caducidad", o a unirlos en el mismo significado como equivalentes o a darles igual sentido en el contenido implícito del concepto jurídico. El caso de *Rosado* v. *Sucn. Matta*, 19 D.P.R. 307 (Hernández, Presidente) (1913) cita precisa a la pág. 308, es un buen ejemplo de esta ambivalencia: "Y como la acción para reclamar su filiación había de durar hasta dos años después de ser mayor de edad, o sea hasta el 12 de enero de 1911, es obvio que al fallecer Teodosio Matta el 9 de enero de ese mismo año, aún quedaban a la demandante tres días para poder ejercitar su acción de filiación. No la ejercitó hasta el 22 de mayo y por tanto al ejercitarla estaba ya extinguida o había prescrito por haber transcurrido más de dos años después de ser la demandante mayor de edad." En el caso de *Castro* v. *Solís et al.*, 19 D.P.R. 677, (Aldrey) (1913), cita precisa a las págs. 680–681, al contrastar las citas de jurisprudencia sobre caducidad y las disposiciones sobre filiación aplicadas con el concepto de prescripción empleado por el ilustrado ponente, se da uno cuenta que usa el término "prescripción" como equivalente

a la "caducidad". Veamos: "Ahora bien, cuando en 1897 murió Joaquín Leandro Solís Kercado, la demandante era menor de edad y tenía viva su acción de acuerdo con el artículo 137 del Código Civil Español, mas disponiéndose por el 199 del Código Civil Revisado que la acción sólo durase hasta dos años después de ser el hijo mayor de edad y habiéndola alcanzado la demandante en 1907, de acuerdo con el artículo 317 que la fija a los veinte y un años cumplidos, se habían *extinguido* ya esos dos años cuando en 1911 presentó su demanda y por tanto estaba *prescrita*, por lo que no cometió error la corte inferior al declarar su prescripción. Que la acción de filiación es *prescriptible* y que a los nacidos bajo el imperio de las leyes de Toro les son aplicables las disposiciones de los códigos posteriores sobre prescripción, son materias tan ampliamente discutidas y resueltas en varias sentencias de este Tribunal Supremo, que nos basta referirnos a ellas, con mayor razón cuando no es el punto discutido por la parte apelante. Véanse los casos de *Gual* v. *Bonafoux*, 15 D.P.R. 559; *Amsterdam* v. *Puente*, 16 D.P.R. 554; *Escobar* v. *Escobar et al.*, 16 D.P.R. 590; *Rijos* v. *Folgueras et al.*, 16 D.P.R. 624 . . . *Calaf et al.* v. *Calaf*, 17 D.P.R. 198." El sentido de "caducidad", con que se emplea el concepto de prescripción, el "en vez del anverso"—nuevo término acuñado por la psicología última de las imágenes—está claro no sólo por la referencia a los artículos de filiación que establecen los términos para la caducidad y a la jurisprudencia sobre caducidad sino también por el repudio a la alegada imprescriptibilidad por la interrupción continua del término prescriptivo creada por la conducta del padre. Igual situación presentan los casos de *Peñagarícano* v. *Peñagarícano*, 19 D.P.R. 494, (Wolf) (1913), cita precisa a la pág. 498 *in fine* y *Figueroa* v. *Díaz et al.*, 20 D.P.R. 284 (Hernández, Presidente) (1914), cita precisa a las págs. 287–288 y *Castro et al.* v. *Solís et al.* (2do. caso), 23 D.P.R. 516 (Hernández, Presidente) (1916), cita precisa a las págs. 521–523.

En el caso de *Orta* v. *Arzuaga et al.*, 23 D.P.R. 259 (Del Toro) (1915), cita precisa a la pág. 267, se destaca la naturaleza especialísima de la acción de filiación y el carácter excepcional de la prescripción a que la misma da causa, repitiéndose: "La *naturaleza especialísima* de la acción de filiación fue fijada con toda claridad por esta Corte en el caso de *Gual* v. *Bonafoux*, 15 D.P.R. 559, 568. Hablando por la Corte el Juez Presidente Hernández se expresó así: 'Aun más, prescindiendo de cuanto dejamos expuesto para sostener que la acción de reconocimiento ha prescrito por haber transcurrido el tiempo señalado para su ejercicio por la ley aplicable al caso, parécenos que el artículo 1973 del Código Civil español que es el 1874 del revisado, no es de aplicación al *caso excepcional de prescripción* de que se trata, por cuanto el artículo 1938 del Código Civil antiguo que es el 1839 del revisado, establece que las disposiciones del título 18 de ambos códigos sobre prescripción, se entienden sin prejuicio de lo que en ambos códigos se establezca respecto a determinados casos de prescripción. El caso de prescripción de que estamos tratando es especial y de tal naturaleza, que no cabe *interrupción del término*, pues si la acción de reconocimiento de hijos naturales sólo ha podido ejercitarse en el tiempo que marca el artículo 137 del Código Civil español, aplicable al caso, es claro que la acción desaparece y *queda extinguida transcurrido el tiempo para su ejercicio*. Al señalar dicho código tiempo cierto y determinado para el ejercicio de la acción de reconocimiento parece como que quiso evitar incertidumbres y amenazas que pudieran perturbar la paz y sosiego de la familia.' " (Énfasis por entrelínea suplido.)

El caso de *López* v. *López et al.*, 23 D.P.R. 824 (Hernández, Presidente) (1916), cita precisa a las págs. 827–828, vuelve a restituir expresamente la noción de "caducidad" en nuestra jurisprudencia civil: "La ley 9 de marzo de 1911 no es aplicable al recurrente. El demandante, según se alega en la demanda, nació por los años de 1881 a 1882, y de acuerdo

con el artículo 137 del Código civil de 1889, hubiera podido ejercitar su acción de filiación en vida de su presunto padre, pero ese artículo fue modificado por el 199 del Revisado, según el cual la acción para reclamar la filiación sólo duraría hasta dos años después de ser el hijo mayor de edad, o en caso de ser mayor de edad, en 1902, sólo dos años después de la vigencia de dicho código, interpretación esta última necesaria a los efectos de que dicho artículo 199 del Código Civil Revisado pueda considerarse constitucional. El demandante no ejercitó la acción de filiación dentro del término de dos años que le otorgaba el artículo 199 del Código Civil Revisado, y viene a ejercitarla en 16 de noviembre de 1915 cuando ya había *caducado*. La ley citada no puede dar vida a un derecho fenecido." Pero en el caso de *Ramírez et al.* v. *Ramírez et al.*, 30 D.P.R. 617 (Wolf) (1922), cita precisa a la pág. 626 se vuelve a utilizar el término "prescripción" en una situación de hechos parecida a la del caso anterior.

El caso de *Ciuró* v. *Ciuró et al.*, 31 D.P.R. 728 (Wolf) (1923) cita precisa a la pág. 730 se reafirma la especialidad de la prescripción en las acciones de filiación y su ininterrumpibilidad: "Según esta corte el demandante debió haber establecido su acción dentro de los dos años después de llegar a su mayoridad de acuerdo con el artículo 199 del Código Civil y resolvimos que la ley de 1911 no revivía la acción . . . . Anteriormente en el caso de *Jesús* v. *Sucesión de Pérez Villamil*, 18 D.P.R. 403, habíamos resuelto la misma cuestión y en el de *Gual* v. *Bonafoux*, 15 D.P.R. 559, resolvimos que la *prescripción* de los derechos de un hijo natural era de un orden distinto a la *prescripción ordinaria* de las deudas y no podía ser interrumpida." El caso de *Vázquez* v. *Rucabado*, 33 D.P.R. 439 (Aldrey) (1924), cita precisa a la pág. 442 presenta un caso de caducidad de acción pero aunque se aplica debidamente la teoría correcta de extinción por el transcurso del término legal y no el concepto de abandono implícito que le sirve de fundamento a la prescripción, vuelve

a emplearse el término prescripción: "Como según el artículo citado del Código Civil" (Art. 194 según enmendado por la Ley Núm. 73 de 9 de marzo de 1911, igual al Art. 126 actual del Código Civil de Puerto Rico de 1930) "las acciones para el reconocimiento de hijos naturales sólo podrán ejercitarse en vida de sus presuntos padres o un año después de su muerte, salvo los casos de excepción que el mismo artículo contiene y en ninguno de las cuales están comprendidas las demandantes, y como la acción de filiación ejercitada en la demanda enmendada fue establecida en 10 de febrero de 1922 o sea después de un año de la muerte de Mateo Rucabado, ocurrida cuando las demandantes tenían 24 y 28 años de edad, esa acción claramente está prescrita . . . ."

En el caso de *Guadalupe* v. *González*, 34 D.P.R. 669 (Del Toro) (1925), cita precisa a las págs. 673–674 se vuelve a aplicar correctamente el concepto de caducidad por extinción del término aunque se califica como uno de prescripción: "Pero aún dando entero crédito a la partida de matrimonio, no ya a la partida de matrimonio, sino a la declaración de la comadrona en lo más desfavorable a la demandante, tendría que reconocerse que la demandante había nacido alrededor de 1898 y que cuando interpuso la demanda tendría de 23 a 25 años de edad y cuando comenzó a regir la enmienda del 1911 al artículo 194 del Código Civil tendría de 13 a 15 años. Siendo ello así, la ley aplicable de acuerdo con la 4ª de las Disposiciones transitorias del Código Civil, sería el artículo 194 de dicho Código, tal como fue enmendado en 1911, y como por dicha enmienda se establece que la acción para el reconocimiento podrá ejercitarse en vida de los presuntos padres, o un año después de su muerte, y como no había transcurrido un año después de la muerte del presunto padre cuando la acción fue ejercitada en este caso, erró la corte al considerar la acción *prescrita*."

En el caso de *Resto* v. *Silva*, 38 D.P.R. 332 (Del Toro) (1928) cita precisa a la pág. 334 se vuelve a rechazar la

posibilidad de una interrupción en el término prescriptivo
de una acción de filiación siguiendo los casos de *Gual* v.
*Bonafoux* y *Ciuró* v. *Ciuró*, antes acotados y a incluir el con-
cepto de caducidad según se expresó en el caso de *López* v.
*López* de que ya se ha hablado: "Pero se alega que en este
caso ha habido una interrupción o renuncia del derecho por
haber estado siempre la demandante desde su nacimiento en
1876 hasta la muerte del padre en 1926 en la posesión
continua de estado de hija natural. Entendemos que la acción
de la demandante *caducó* en 1904, o sea dos años después
de la vigencia del Código Civil revisado, por ser mayor de
edad en 1902 y que los actos posteriores a 1904 no pueden
dar vida a un derecho fenecido. *López* v. *López*, 23 D.P.R.
824. La prescripción de los derechos de un hijo natural es de
orden distinta a la prescripción ordinaria de las deudas y
no puede ser interrumpida. *Gual* v. *Bonafoux*, 15 D.P.R. 559;
*Ciuró* v. *Ciuró*, 31 D.P.R. 730."

Esta ambivalencia en nuestra doctrina sobre la extin-
ción de las acciones de filiación natural hace crisis en el caso
de *Fuentes* v. *Tribunal de Distrito*, 73 D.P.R. 959 (Ortiz)
(1952) cita precisa a la pág. 978 en el cual se resuelve: "El
ya citado artículo 1873 de nuestro Código Civil, que deter-
mina la interrupción de términos prescriptivos en virtud de
reclamaciones judiciales, debe ser interpretado como aplica-
ble a acciones de filiación y en tanto en cuanto al caso de
*Gual* v. *Bonafoux*, supra, establezca una doctrina contraria,
tal caso debe considerarse como revocado en cuanto a este
extremo. También deben ser considerados como revocados los
casos de *Ciuró* v. *Ciuró*, supra y *Jesús* v. *Sucn. Pérez Villamil*,
supra, en los cuales se establece el mismo dictamen erróneo del
caso de *Gual* v. *Bonafoux*, supra." El caso de *Fuentes* es un
estudio valioso en cuanto a sus otros extremos, pero en cuanto
a este extremo está equivocado.

■ Por el análisis un tanto detallado que hemos hecho
de nuestra primera jurisprudencia civil sobre "prescripción"

y "caducidad", hemos visto, que al considerar todos y cada uno de los extremos de la prescripción en cuanto a interrupción del término, renuncia del término, posible equiparación de los derechos familiares con los derechos patrimoniales, extensión del plazo legal, etcétera, nuestra jurisprudencia, no ha equiparado la extinción por el transcurso del término legal con la prescripción ordinaria del Código Civil. No podía hacerlo, y no puede hacerse aún porque se trata de una institución de orden público, en el cual hay que proteger las dos partes de la relación civil envuelta, sin crear una mística a favor de ninguna. La mejor contestación en contra del principio de interrupción lo hemos encontrado en el trabajo del ilustrado profesor de la Universidad de Puerto Rico Guaroa Velázquez en su trabajo antes citado: "La prescripción no es una institución aplicable al derecho de familia, ya que la ley la configura para aplicarla solamente a la esfera del derecho privado (patrimonial) estableciéndola para proteger intereses individuales de que el particular pueda disponer; por tanto, no pueden estar sujetos a prescripción los derechos que están fuera del comercio y no son susceptibles de disponibilidad por los particulares, entre los cuales derechos figuran los de filiación." Como dicen A. Colin y H. Capitant: "La prescripción es una forma de renuncia. Los derechos que no se puden enajenar, no pueden tampoco prescribir." (Pág. 245.)

La sujeción al plazo legal provisto por el Art. 126 fue restablecido en el caso *Figueroa* v. *Sucn. Carrasquillo*, 74 D.P.R. 1 (Pérez Pimentel) (1952), cita precisa a la pág. 5: "Los hechos alegados en la demanda establecen que Luisa O'Neill, madre de los demandantes, reunía la condición de hija natural y que su padre Antonio Carrasquillo Carrión falleció el 11 de junio de 1951. Habiéndose radicado la demanda en este caso, en el mes de septiembre del mismo año 1951, la acción se ejercitó dentro del año de fallecido Carrasquillo Carrión, y por tanto, no ha prescrito, conforme a las disposi-

ciones del artículo 126 del Código Civil, preceptivo de que las acciones para el reconocimiento de hijos naturales, sólo podrán ejercitarse en vida de los presuntos padres o un año después de su muerte, salvo en ciertos casos que es innecesario mencionar aquí."

Como cuestión marginal a la caducidad sería bueno dejar aclarada la intransmisibilidad por herencia de los derechos de cualquier filiación natural fuera de la habilitación por representación tutelar o continuación de instancia provisto por nuestro Código.

Oigamos a Puig Peña: "La acción de reclamación de estado compete sólo al hijo, dado el carácter legal que tiene. Nadie a excepción de su representante legal, si es menor de edad, tiene atribuciones para ejercitarla por él. Sus acreedores, pues, quedan descartados, cualesquiera que sean sus intereses pecuniarios, en hacer reconocer la filiación y, por consiguiente, los derechos patrimoniales de su deudor. Esta acción dura toda la vida del hijo, pudiendo los herederos continuar la acción después de entablada, si no hubiese caducado la instancia. Por excepción se concede a los herederos poder para ejercitar la acción por primera vez si fallece el hijo durante la menor edad o en estado de demencia. En estos casos tendrán los herederos cinco años de término para entablar la acción. Se presume que su juventud le ha impedido reclamar, y que ha muerto sin tener tiempo de hacerlo (si ha muerto después de la mayoría, se presume, por el contrario, que ha renunciado a la acción, y esta presunción es inatacable). (12) — (12) Juntas a la caducidad de la instancia cabe añadir el desistimiento de la acción o cualquier otro medio por el que concluye las acciones litigiosas, porque, indudablemente, las exigencias del legislador es que, al fallecimiento del hijo, haya pleito pendiente." II, Vol. II, Puig Peña—*Tratado de Derecho Civil* 28 (ed. Revista de Derecho Privado). Añade Castán: "Nada dice el Código respecto a si la acción de reconocimiento es transmisible a los herederos

del hijo natural que no la haya ejercitado en vida (1) y parece dudoso que pueda ser aplicable a la filiación natural, por analogía, el precepto del art. 108 (113 nuestro) que admite la transmisión de la acción para reclamar la legitimidad. (1) En otras legislaciones está ya clara la posibilidad de que los herederos del hijo ejerciten la acción. Así el Código venezolano de 1942 preceptúa en su art. 213 que 'los herederos o descendientes pueden continuar la acción intentada por el hijo si no ha habido desistimiento o perención (caducidad) de instancia'. En el Derecho argentino, admitido que los herederos tienen la acción, se discute si sólo podrán ejercitarla en las condiciones que el Código establece para los hijos legítimos (opinión de Lafaille), o si no les afectarán aquellas limitaciones por ser diferentes el ejercicio de una y otra acción (tesis de Busso, Ojea y Borda)." 5, Vol. II, Castán— *Derecho Civil Español, Común y Foral* 78 (Instituto Editorial Reus), Séptima edición 1958.

Por otro lado, se considera como una obligación no transmisible: la de reconocer a los hijos naturales del causante excepto cuando el padre hubiese fallecido durante la menor edad del hijo, o cuando después de la muerte del padre o de la madre, apareciere algún documento de que antes no se hubiese tenido noticia, en el que reconozca expresamente al hijo, en cuyos dos casos hay que seguir los términos provistos por el Art. 137 español (126 nuestro): 3 Oyuelos *Digesto*, págs. 114–115). Según Borrell y Soler, existen dos acciones que importa no confundir; la de pedir la declaración de filiación y la que tiene por objeto impugnarla. La primera de ella es inherente a la personalidad del hijo, lo cual podría hacer creer que es *imprescriptible, por lo menos mientras vive el hijo, pero el Art. 137 español (126 nuestro) no permite hacer esta interpretación* extensiva porque establece plazos determinados: durante la vida del padre en España y durante la vida del padre o un año después de su muerte en Puerto Rico; si el padre o la madre hubiesen fallecido durante la

menor edad del hijo, en cuyo caso éste podrá deducir la acción antes de que transcurran los primeros cuatro años de su mayor edad en España y en Puerto Rico: si después de la muerte del padre o de la madre apareciere algún documento de que antes no se hubiese tenido noticia, en cuyo caso la acción deberá deducirse dentro de los seis meses siguientes al hallazgo del documento en España y en Puerto Rico: IV Borrell y Soler *Derecho Civil Español*, 110 (Ed. Bosch 1954).

El notable profesor de la Universidad de Bolonia, Antonio Cicu, hablando sobre la intransmisibilidad, y por consecuencia de la necesidad de autorización expresa del estatuto durante determinado plazo, se expresa así: "Por tanto, mientras viva el hijo, a él corresponderá únicamente la acción de reclamación, sin limitación de tiempo, como tendremos ocasión de ver. Después de su muerte la ley concede la acción a sus herederos y descendientes, pero a condición de: a) que el hijo no ha ejercitado la acción mientras vivía; b) que hubiese muerto durante la menor edad o durante los cinco años siguientes a su mayor edad. La acción de los herederos no se transmite a éstos con la herencia, sino que les es concedida directamente por la ley. La doctrina quiere ver ordinariamente una transmisión hereditaria de la acción y justifica su opinión con la protección debida al derecho hereditario; había por ello de acción patrimonial de estado con efectos limitados a la mera declaración del derecho hereditario. Para nosotros, que hemos excluido todo esto, la concesión de la acción a los herederos como tales es de difícil justificación. La ley consentiría, por proteger el interés egoísta de recibir una herencia, el plantear una cuestión de estado tan delicada que, si viviese el hijo, sólo éste podría promoverla; pospondría, pues, la tutela del interés superior conexo al estado de la persona, a la protección del interés individual y patrimonial de los herederos. No hallamos nosotros otra explicación que no sea la meramente histórica, que hace del heredero un continuador de la personalidad del difunto, un protector de sus intereses

morales; concepción que se inspira en el art. 400 del Código Penal, que otorga a los herederos la facultad de querellarse por las ofensas inferidas a la memoria del difunto. Explicación ésta, como dijimos, meramente histórica, porque con el nuevo concepto de la herencia no tiene ya valor alguno, lo que induce al intérprete a considerar la disposición aludida como estrictamente excepcional . . . .

"En el estado de las personas resulta tutelado, como ya dijimos, un interés superior. De aquí el principio comúnmente aceptado, aunque erróneamente aplicado, de que las personas no pueden disponer de su estado. Constituye esto para su titular una ventaja pero sólo de rechazo. Por otra parte, si el estado es la pertenencia orgánica de una persona a la familia, no puede aquel separarse en modo alguno de la persona. Este riguroso *personalismo* del estado se refleja también en las acciones de estado, (acciones de filiación). Estas son ante todo intransmisibles. Pero este carácter es discutido. La doctrina, aplicando la distinción de acciones morales y patrimoniales, o de carácter moral y patrimonial, declara transmisibles las acciones patrimoniales de estado. Le induce a hacer tal declaración el hecho de que en la concesión de la acción de reclamación y de impugnación a los herederos ve una transmisión hereditaria de la acción. Dijimos ya que, más bien que transmisión de la acción, hay aquí una atribución directa por la ley. Fácil es demostrar que no hay transmisión. Ante todo, la acción de reclamación se concede a los descendientes como tales; con relación a ellos no puede hablar de transmisión. En segundo lugar, admitida la transmisión hereditaria debiera admitirse también la transmisión por legado o por acto de voluntad, veremos que algunos admiten la transmisión por legado. Pero, sobre todo, es el concepto mismo de transmisión el que no es aplicable aquí. La transmisión implica que el adquirente pueda hacer valer como propio el derecho, el bien que el transmitente pudiera hacer valer como suyo. En nuestro caso, el heredero

debería reclamar o impugnar un estado propio; por el contrario, reclama o impugna el estado del difunto. En otros términos, la intransmisibilidad es consecuencia necesaria de la inseparabilidad del estado de la persona a que va unido. Por ello no ofrece duda para nosotros el que la acción de reclamación y de impugnación de paternidad no puedan ser transmitidas por testamento, ni ejercitadas por cesionarios de la herencia, ni por los legatarios, ni por herederos de los herederos. No vale la pena detenerse en poner de relieve las inseguridades e inconsecuencias de la doctrina a este respecto que admite para la acción de reclamación lo que rechaza para la de impugnación:" Cicu—*La Filiación*—págs. 154 a 155, 161 a 162 (ed. Revista de Derecho Privado 1930). Tenemos entendido que el nuevo Código italiano, en su Art. 269, hace transmisible a sus herederos la acción del hijo para solicitar su filiación, aunque sujeta a varias condiciones: 3 Scaevola —*Código Civil* 417, escolio 2 (ed. Reus 1942).

Por cierto, la cita anterior de Scaevola, demuestra, que no obstante el criterio personal del autor, considera el asunto como regido por la Ley civil. Oigámosle: "Refiérese la otra cuestión a si los herederos del hijo natural que haya muerto podrán exigir el reconocimiento del padre. Por ejemplo: Si un nieto, en el caso de que haya muerto su causahabiente sin ser reconocido, tendrá derecho para que lo sea por su abuelo. El Código habla siempre del hijo, sin mencionar para nada a sus descendientes, y hace esto tratándose, no sólo del reconocimiento forzoso, sino del voluntario, Si a esto añadimos que al ocuparse la ley de los derechos sucesorios de los hijos naturales emplea siempre la palabra 'reconocidos', y teniendo asimismo en cuenta el espíritu restrictivo dominante en todo lo concerniente a dichos hijos, precisa inferir que los herederos de éstos (los hijos naturales) carecen de tal facultad."

De acuerdo con Colin y Capitant—1 Colin y Capitant, *Curso Elemental de Derecho Civil*, págs. 700 a 701 y 722 (ed. Reus 1952) :—"La acción de investigación de la filiación

natural es *intransmisible y personal*. De suerte que los herederos del hijo no podrán intentarla si ha muerto sin haberla incoado, y mientras viva nadie más que él o su representante legal obrando en su nombre, si es menor, podrá ejercitar esta acción . . . . Sea lo que fuere, lo cierto es que el sistema de la jurisprudencia nos parece que ha recibido una consagración legislativa en la Ley del 16 de noviembre de 1912 sobre la investigación de la paternidad natural. El artículo 340 párrafo 10, nos dice de una manera formal que 'la acción sólo pertenece al hijo' de donde resulta que después de su fallecimiento no podrá ser intentada ni continuada por nadie . . . . El Código sólo dice de un modo expreso—aunque incidental—que el hijo puede ejercitar esta acción (art. 137 núm. 1); también podrá ejercitarla la madre durante la menor de edad de aquél (Sents. de 13 de mayo de 1902 y 26 de marzo de 1904); e igualmente podrá entablar la acción el tutor autorizado por el Consejo de familia, en nombre del pupilo (Sent. de 29 de diciembre de 1916). El Código señala un plazo normal para el ejercicio de la acción y ciertas excepciones. El primero es la vida de los presuntos padres. (Art. 137 ap. 1° francés; 137 español; 126 puertorriqueño.) Excepcionalmente, podrá ejercitarse después del fallecimiento de aquéllos, en dos casos:'1° Si el padre o la madre hubiesen fallecido durante la menor edad del hijo, en cuyo caso éste podrá deducir la acción antes de que transcurran los primeros cuatro años de su mayor edad. 2° Si después de la muerte del padre o de la madre apareciere algún documento de que antes no se hubiese tenido noticia en que reconozcan expresamente al hijo" (art. 137). El plazo de cuatro años indicado en el número primero del art. 137 no debe interpretarse en el sentido de que el hijo tenga que esperar a cumplir la mayoría de edad para entablar la acción (Sent. de 23 de junio de 1902); puede ejercitarla, en efecto, antes de que transcurran los cuatro primeros años de su mayor edad, sea cualquiera la edad que tenga; pero no hay que olvidar el precepto del art. 133,

(art. 125 último párrafo de Puerto Rico), que exige, para que un menor sea reconocido, ciertas garantías y circunstancias de intervención fiscal y aprobación judicial (Sent. de 29 de diciembre de 1916). El documento a que se hace referencia en el número 2 del artículo 137, entendemos habrá de reunir el carácter de indubitado (art. 135 núm. 1° francés, 135 español, 125 puertorriqueño); si el documento es público, no será necesario ejercicio de acción ninguna, pues se tratará de un caso de reconocimiento voluntario (art. 131 francés, 131 español, 125 segundo párrafo puertorriqueño). La acción habrá de dirigirse contra el padre, la madre o sus herederos. ¿Será transmisible la acción a los herederos del hijo? La falta de una disposición análoga a la del art. 118—(Art. 118 francés, 118 español, en vigor en Puerto Rico el 10 de mayo de 1894 cuando nació doña Francisca Rivera, que dispone: 'La acción que para reclamar su legitimidad compete al hijo dura toda la vida de éste y se transmitirá a sus herederos si falleciere en la menor edad o en estado de demencia. En estos casos tendrán los herederos cinco años de término para entablar la acción. La acción ya entablada por el hijo se transmite por su muerte a los herederos, si antes no hubiese caducado la instancia',) inclina a la negativa; pero como en los supuestos de dicho artículo resulta justa la transmisión, nos inclinamos a una aplicación analógica del mismo, adaptada a las hipótesis del art. 137' (Art. 137 español; 125 puertorriqueño), o sea, podría recurrir a la aplicación analógica cuando la acción para la filiación natural se ejercite durante la vida de los presuntos padres (francés, español) o un año después de su muerte (puertorriqueño), y en caso del fallecimiento del padre o de la madre durante la menor edad del hijo, cuatro años después que dicho hijo llegare a su mayor edad, y en caso del hallazgo del documento después de la muerte del padre o de la madre, seis meses a contar desde la fecha del hallazgo."

En cuanto al aspecto de la intransferibilidad hemos acotado conjuntamente las autoridades que se refieren a las acciones de la filiación legítima y las acciones de la filiación natural debido al complejo doctrinal que crea tanto el Art II, Sec. 1 de la Constitución de Puerto Rico, en el sentido, que: "No podrá establecerse discrimen alguno por motivo de raza, color, sexo, *nacimiento*, origen o condición social, ni ideas políticas o religiosas" y la disposición de la Ley Núm. 17 de 20 de agosto de 1952, en el sentido, que: "Todos los hijos tienen respecto a sus padres y a los bienes relictos por éstos, los mismos derechos que corresponden a los hijos legítimos." No por ello hemos dejado de estar advertidos en todo momento que la legitimación siempre queda establecida en virtud de ciertas presunciones legales que permite el hecho del matrimonio entre el padre y la madre del hijo, mientras que cuando se trata de hijos nacidos fuera de matrimonio, hay que establecer por prueba directa, el estado de hijo en una declaración judicial. Pero la equiparación de los derechos derivados de la filiación hace necesario, como una cuestión de conveniencia en el curso ordenado de la justicia, la mayor uniformidad posible de los remedios, las impugnaciones, la caducidad de las instancias. En la misma forma que dentro del procedimiento de legitimación se han agrupado en el pasado los derechos de los hijos legitimados por subsiguiente matrimonio, los hijos póstumos, los hijos sobrevivientes, los errores en la inscripción, tratar debemos de incluir dentro del procedimiento de reconocer los hijos naturales, a los ilegítimos.

Como se ve, la transferibilidad de la acción de filiación a los herederos del hijo natural necesita una declaración legislativa expresa, pues el interés público que reviste la cuestión merece una cuidadosa y profunda consideración de las circunstancias históricas, sociológicas y demográficas de la cuestión. Los códigos que guardan origen con el nuestro, el italiano, el francés, el español han conservado el mismo orden que el nuestro, por entender y con muy buen juicio, que la

institución de la familia debe conservar su mayor claridad, su más segura identidad ante los otros grupos sociales y económicos que junto con ella forman la sociedad humana. Así todas las impugnaciones contra la legitimidad, la condición jurídica de cada uno de los miembros de una familia deben ejercitarse con diligencia y de no hacerse así debe caducar, tan pronto transcurra el plazo legal establecido por el Derecho de familia, las acciones que puedan afectar la estructura ontogénica, el régimen tutelar, la distribución de las herencias familiares. Igual prudencia han demostrado los Códigos Civiles al sostener el principio que el derecho a solicitar la filiación debe ser uno personalísimo del hijo, no transmisible a sus herederos en ausencia de una disposición legal expresa. Las dos excepciones reconocidas tanto por la doctrina como por la Ley civil son, cuando los presuntos padres fallecieren durante la minoridad del hijo en cuyo caso se espera hasta que el hijo pueda formar por sí juicio sobre tan importante asunto o cuando apareciere algún documento de que antes no se hubiere tenido noticia, en el que se reconozca expresamente al hijo. Este principio de la completa soberanía del hijo para determinar su estado familiar trae como consecuencia que nadie puede reconocer a alguien como hijo sin contar con el consentimiento del reconocido, pues sabido es, que los hijos tienen deberes que cumplir respecto a sus padres que pueden resultar mortificantes a su honra u onerosos a su intereses, como son las tutelas de la interdicción y los alimentos de acuerdo con las circunstancias económicas del alimentante. Además hay hijos que prefieren mantener su estado de filiación natural antes de arrojar la historia íntima de su madre a la maledicencia.

El estudio que hemos detallado anteriormente demuestra que el articulado civil referente a los derechos de la filiación, tanto legítima como natural, nivelado en cuanto a la filiación ilegítima por la Ley Núm. 229 de 12 de mayo de 1942, según enmendada por la Ley Núm. 243 de 12 de mayo de

1945, en el sentido, de declarar hijos naturales a todos los hijos nacidos fuera de matrimonio independientemente de que sus padres hubieran podido o no contraer matrimonio al tiempo de la concepción de dicho hijos y por la disposición del Art. II, Sec. I de la Constitución de Puerto Rico y la disposición de la Ley Núm. 17 de 20 de agosto de 1952, que ya hemos acotado, es una versión altruista de la doctrina europea, con todas las esencias del mejor instimismo jurídico y de la autonomía del ser dentro de la sociedad humana, y a la vez, con una razonable oportunidad en tiempo y circunstancia para reparar cualquier desigualdad entre los frutos del dogma y la pasión humana.

■ El estudio demuestra a su vez que los plazos legales establecidos por los Arts. 117, 126 y cualesquiera otros comprendidos en las acciones de reconocimiento o de impugnación de reconocimiento son plazos de caducidad y no términos de prescripción. La diferencia entre una y otro consiste en que (1) los plazos de caducidad son siempre extintivos del derecho a la causa de acción; (2) la finalidad de la prescripción es dar por extinguido un derecho abandonado por su titular mientras que la finalidad de la caducidad es fijar de antemano el tiempo durante el cual puede un derecho ser ejercitado útilmente; (3) mientras que la prescripción admite causas de suspensión y de interrupción del término, en la caducidad no tienen efecto dichas causas, porque el efecto extintivo es radical y automático; (4) la prescripción hay que formularla siempre como una excepción a la viabilidad del derecho por el demandado al cual favorece, pudiendo dicho demandado renunciar a ella si así lo prefiere mientras que la caducidad debe el Juez hacerla valer *ex officio judicis* por constituir "un presupuesto negativo del derecho" (Santamaría); (5) "Mientras la acción en camino de prescribir puede quedar sujeta a un nuevo término de prescripción esto no sucede con la caducidad, la cual no puede revivir una vez se ha incurrido en ella". (Puig Peña.)

En cuanto al carácter hereditario de la acción, ya hemos visto los casos en que por haber muerto el hijo durante su minoría de edad o en estado de demencia pueden sus herederos iniciar la acción concedida al hijo o en caso de muerte del hijo, continuar la acción ya entablada por éste si antes no hubiere caducado la instancia. Esta es doctrina corriente en el Derecho de filiación y además, podría ser aplicable a los casos de filiación de los hijos fuera de matrimonio dentro de nuestro nuevo clima constitucional, el Art. 118 del Código Civil español, derecho supletorio nuestro en ausencia de una disposición legislativa al efecto. Lo importante en la cuestión, según hemos tratado de explicar, es no volver a construir una barrera infranqueable entre las disposiciones referentes a la legitimidad y a la filiación natural y salvar los plazos de caducidad de toda ambigüedad puesto que están ungidos por la sabiduría de una virtud especial para preservar la salud de la sociedad humana. Cuando se piensa que el plazo concedido al hijo nacido fuera del matrimonio para pedir su reconocimiento de hijo dura toda la vida de sus presuntos padres y un año más después de su muerte, no puede pensarse en ningún efecto en que la juntura del tiempo produzca una usura del ánimo.

Decía nuestro ilustrado compañero Sánchez Torres, al comentar una conferencia de don Florencio Porpeta en el ilustre Colegio Notarial de Valencia,—7–8 Revista de Derecho Mercantil 432 (1949)—que en unos de los viajes que hizo el glorioso poeta belga Mauricio Maeterlink, a la Provenza, vio un reloj de sol adornado con una inscripción latina que decía: "Horas non numero nisi serenas"—(Yo sólo cuento las horas claras).

*Debe confirmarse la sentencia dictada por el fundamento de haber caducado la acción.* En cuanto a la segunda cuestión, referente a la transmisibilidad hereditaria de la acción, el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Pérez Pimentel, Hernández Matos, Blanco Lugo,

Rigau y Ramírez Bages se reservan su opinión para pasar juicio en su momento oportuno, cuando así lo requiera la resolución del caso. Los Jueces Asociados Señores Santana Becerra y Dávila no intervinieron.