INDUSTRIAL EQUIPMENT CORPORATION, demandante y recurrente, *v.* BUILDERS INSURANCE COMPANY y CONTRERAS y MÉNDEZ CONSTRUCTION CORPORATION, demandados y recurridos.

*Número:* R-78-68 *Resuelto:* 19 de enero de 1979

*Ramón Torres Braschi,* abogado de la recurrente; *Cancio, Nadal & Rivera* e *Hilda D. Rodríguez,* abogados de las recurridas.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

El Tribunal Superior, Sala de San Juan, desestimó demanda instada por una firma proveedora de materiales para un proyecto de construcción, contra una compañía fiadora que garantizaba el pago de materiales y mano de obra suplidos para dicho proyecto. Concluyó en su sentencia que requerimientos extrajudiciales hechos a la fiadora no tuvieron el efecto de interrumpir el plazo de un año consignado en la fianza para instar acción por tratarse, a juicio del tribunal sentenciador, de un plazo de caducidad. La firma demandante ha recurrido, y por resolución de 13 de abril de 1978 requerimos de la otra parte que mostrara causa por la cual no debamos revocar. La recurrida ha comparecido pero no nos persuade. Resolvemos que no aplican a los hechos de este caso las reglas sobre caducidad de las acciones.

Se trata de una fianza de las comúnmente conocidas como *payment and performance bond,* o fianza de pago y cumplimiento, otorgada por Builders Insurance Company, como fiadora, en relación con un proyecto denominado Playa Santa del Caribe, sito en Guánica, a cargo de la constructora contratista Contreras y Méndez Construction Corp. El mismo día que se expidió la fianza se le adicionó un aditamento (*rider*) que dispone, en lo aquí pertinente:

"No right of action shall accrue on this bond to or for the use or benefit of any person or corporation other than the Owner and Lender herein named; and no suit, action or proceeding shall be had or maintained against a Surety on this bond unless the

same be brought or instituted within one (1) year after date or [*sic*] which principal last performed work on the project in accordance with the Contract, or one (1) year after the date of any default by principal in the performance of the contract whichever shall first occur."

Los negocios no le fueron bien a la contratista, y ésta cesó de trabajar en el proyecto el 29 de abril de 1975. En esa fecha cedió todos sus derechos y acciones sobre el proyecto a la fiadora Builders, que se hizo cargo de continuar el proyecto. Días antes—el 18 de abril—Industrial Equipment Corporation se dirigió por correo certificado a Builders y le reclamó el pago de $47,068.81 que alegó le eran adeudados por Contreras y Méndez por concepto de materiales y equipo suplidos para el proyecto.[1] Builders refirió la carta a su abogado que con fecha de 22 de mayo de 1975 contestó acusando recibo de la misma, e informando que una vez dilucidaran determinados "pormenores de carácter legal" darían "curso normal a sus reclamaciones". Industrial Equipment reiteró su reclamación posteriormente y como no recibiera más respuesta, demandó a Builders y a Contreras y Méndez en cobro de lo reclamado. La demanda se presentó el 18 de mayo de 1976, diecinueve días en exceso del año establecido en el *rider*.

No negamos que independientemente de la ley, un plazo de caducidad puede establecerse por convenio. Sin embargo, estamos ante un contrato en que el beneficiario es un tercero que no participa en su redacción ni otorgamiento, ni hay base para presumir que conozca su existencia y mucho menos sus cláusulas y condiciones. A pesar de que en el *rider* a que nos referimos se especifica que "[*no*] *right of action shall accrue on this bond to or for the use or benefit of any person or corporation other than the Owner and Lender*

---

[1] Decía en su carta:

"Hemos sido informados que esa compañía aseguradora se ha hecho cargo de estos proyectos, por lo cual les estamos informando sobre el particular y solicitando que nos envíen su remesa para cubrir este balance que se encuentra vencido hace mucho tiempo."

*herein named;"* bajo lenguaje similar reconocimos en *Cristy & Sánchez* v. *E.L.A.*, 84 D.P.R. 234 (1961), respecto a obras públicas y en *A. L. Arsuaga, Inc.* v. *La Hood Const., Inc.*, 90 D.P.R. 104 (1964), respecto a obras privadas, que el suplidor de materiales es un beneficiario que tiene derecho a reclamar directamente a la fiadora el pago de los materiales suplidos. Negarle ese derecho equivaldría a negar eficacia a la estipulación en favor de tercero.

La distinción entre caducidad y prescripción no ha suscitado problemas en cuanto a su aplicación y efecto una vez se ha identificado el plazo como de caducidad o de prescripción. Es la determinación de cuál de las dos instituciones está presente o aplica lo que ha hecho algo incierto su desarrollo. Véase *Ortiz Rivera* v. *Sucn. González Martínez*, 93 D.P.R. 562, 566–576 (1966).[2] La determinación sobre la calificación que ha de darse a un plazo no puede hacerse depender de palabras más o menos sacramentales. Para ejemplos, se considera de caducidad el término para el *ejercicio* de la acción para el reconocimiento de hijos nacidos fuera de matrimonio (Art. 126 del Código Civil, 31 L.P.R.A. sec. 505); *Ortiz Rivera* v. *Sucn. González Martínez*, supra. Por otro lado, compárese el plazo de seis meses para el ejercicio de las acciones del comprador derivados de la pérdida o deterioro de la cosa vendida por motivo de vicios ocultos. Arts. 1374 a 1378 del Código Civil, 31 L.P.R.A. secs. 3842 a 3846, respectivamente. Dice el Art. 1379, 31 L.P.R.A. sec. 3847: "Las acciones que emanan de lo dispuesto en las cinco secciones precedentes *se extinguirán* a los seis meses, contados desde la entrega de la cosa vendida." (Énfasis suplido.) Ante fraseología tan clara y terminante, resolvimos en *Casa Jaime Corp.* v. *Castro*, 89 D.P.R. 702, 704 (1963), siguiendo la interpretación del Tribunal Supremo de

---

[2] Dice, al efecto, Castán: "En puridad, la técnica imprecisa de nuestro Código civil, y aun de nuestra doctrina científica (todavía poco elaborada en este punto), no permiten trazar con seguridad el deslinde entre los casos de prescripción y los de caducidad." *Derecho Civil Español, Común y Foral*, ed. 1971, Tomo 1, Vol. II, pág. 853.

España, que dicho plazo de seis meses es prescriptivo y se cuenta "desde el día en que se interrumpieron las gestiones de inteligencia entre las partes." Véase, al mismo efecto, *Ferrer* v. *General Motors Corp.*, 100 D.P.R. 246, 255-256 (1971).

La determinación sobre la naturaleza de un plazo— prescripción o caducidad—depende de algo más importante que las meras frases que se utilicen. Hay conceptos más fundamentales que aplicar al hacerse la distinción. Valga señalar, entre otros, los ejemplos de plazos de caducidad reconocidos por la doctrina que a diferencia de la prescripción, aplican a derechos potestativos, a diferencia de los llamados derechos patrimoniales. El propio caso de *Ortiz Rivera*, supra, reconoce como ejemplos típicos de plazos de caducidad y no de prescripción (citando a Pérez González y Alguer, De Buen y Castán), pág. 570, "los referentes a las acciones de nulidad del matrimonio (art. 102, ap. 3), de impugnación de la legitimidad (art. 114), de reclamación de la legitimidad (art. 118), de impugnación del reconocimiento por el menor reconocido (art. 137)". (Los artículos a que se refiere la cita corresponden al Código Civil Español.)

Se advierte de los citados ejemplos que ninguna de las acciones a que se refieren tienen por fin directo la reclamación o conservación de bienes patrimoniales. Es significativo que en oposición a ello, cuando el Código Civil se refiere a la prescripción no la asocia a acciones sobre el estado civil, paternidad, filiación, etc. Por el contrario, sienta como principio cardinal de la institución de la prescripción que: "Son susceptibles de prescripción todas las cosas *que están en el comercio de los hombres.*" (Énfasis suplido.) Art. 1836, 31 L.P.R.A. 5247. De ahí pasa el Código a reglar la prescripción para el dominio y demás derechos reales (Arts. 1840 a 1860, 31 L.P.R.A. secs. 5261 a 5281) ; y, en cuanto a las acciones, solamente regula como prescribibles, las acciones reales sobre bienes inmuebles, que prescriben a los 30 años (Art. 1863, 31

L.P.R.A. sec. 5293) ; la acción hipotecaria, que prescribe a los 20 años (Art. 1864, 31 L.P.R.A. sec. 5294) ; las acciones para exigir el pago de pensiones alimenticias, satisfacer el precio de los arriendos, y los de cualquier pago que deba hacerse por años o en plazos más breves, que prescriben a los 5 años (Art. 1866, 31 L.P.R.A. sec. 5296) ; las acciones para el pago de honorarios y derechos a determinados funcionarios y a profesionales, para el pago de jornales, y para el pago por determinados géneros o mercaderías, que prescriben a los 3 años (Art. 1867, 31 L.P.R.A. sec. 5297) ; y las acciones para recobrar o retener la posesión y para exigir responsabilidad por las obligaciones derivadas de culpa o negligencia, que prescriben al año (Art. 1868, 31 L.P.R.A. sec. 5298).

■ Señala Castán, *op. cit.* supra, pág. 851: "La prescripción se aplica a los derechos subjetivos *en general*, cuando menos a los patrimoniales; la caducidad se refiere a *derechos determinados*—por lo común, los llamados *derechos potestativos*—que, no sólo en razón del interés general, sino también su atención al interés de sujetos particulares, quiere la ley que se ejerciten en un término breve." Véase, en igual sentido, Albaladejo, *Instituciones*, Tomo I, núm. 206, pág. 482.

El profesor Guaroa Velázquez resume en las siguientes palabras la distinción entre estas dos figuras jurídicas:

"La prescripción exige necesariamente una relación jurídica establecida *entre un acreedor y un deudor: supone dos patrimonios en presencia;* de aquí que la prescripción siempre extingue una obligación. Ahora bien, no hay prescripción sino caducidad en todas las hipótesis en que la ley prefija un plazo para realizar cierto acto—*que no implique una relación jurídica de índole creditoria—,* el cual deba ser efectuado dentro del plazo establecido, de suerte que en caso de retardo el interesado pierde su pretensión, no pudiendo ya verificar útilmente el acto del cual dependía la conservación de su derecho o la protección de su interés. Guaroa Velázquez, *Las Obligaciones Según el Derecho Puertorriqueño,* ed. Equity 1964, pág. 256. (Énfasis nuestro.)

■ La acción ejercitada por Industrial Equipment es típicamente crediticia, de naturaleza patrimonial. Se trata de un cobro de dinero.

■ Un fundamento adicional de importancia al determinar si un plazo es de caducidad o de prescripción es el propósito que anima a los sistemas procesales modernos de que se haga justicia, rápida y económicamente. Se trata, además, de fomentar la armonía y la paz entre los ciudadanos, desalentando a su vez los litigios. En el caso ante nos, surge de los autos que la corporación contratista se fue hundiendo en dificultades económicas que la obligaron a cesar en el trabajo el 29 de abril de 1975, fecha en que a su vez cedió por escrito a su fiadora Builders Insurance Company "todos sus derechos, beneficios y acciones que tenga o pueda tener en este proyecto, incluyendo equipo y materiales de construcción . . . ." (Véase el documento de "cesión de derechos y acciones" suscrito y autenticado mediante afidávit Núm. 10,535 ante el notario Olin P. Goble.) En el mismo documento Builders aceptó "hacerse cargo de la obra". Así las cosas, Industrial Equipment reclamó a Builders extrajudicialmente lo que alega se le adeuda y, en vista de la contestación de Builders Insurance Co. de que se le daría "curso normal a sus reclamaciones", esperó pacientemente, aunque no dejó de reiterar su reclamación una vez más. Bajo tales hechos, desestimar su demanda porque no la instó dentro del año, no empece sus reclamaciones extrajudiciales y la esperanza que le dio Builders, sería castigarla por preferir la vía amistosa a los costos y molestias de un pleito. Equivaldría, además, a premiar a Builders Insurance Co. por una actitud que es contraria, cuando menos, al principio de economía procesal.

■ El fiador dejó de ser un favorito del Derecho al transformarse, en la negociación de nuestros días, en corporación con fines pecuniarios que cobra una prima y se lucra con la venta de garantías. Dijimos en *Cristy & Sánchez* v. *E.L.A.*, supra, pág. 244:

"La interpretación restrictiva tuvo su auge en el tiempo en que los fiadores personales, por un mero acto de liberalidad, afianzaban el contrato de obra pública, pero perdió su popularidad con el advenimiento de las compañías fiadoras que se dedican al negocio de prestar fianza mediante el pago de primas."

■ En *A. L. Arsuaga, Inc.* v. *La Hood Const., Inc.*, supra, enfatizamos una vez más la norma de interpretar liberalmente los contratos de fianza. Resolver ahora que el plazo de un año que aquí consideramos es un plazo de caducidad, y que de nada valieron las oportunas reclamaciones extrajudiciales hechas por el materialista y atendidas por la compañía fiadora equivaldría a dar un paso hacia atrás en la tendencia liberalizadora comenzada en *Cristy & Sánchez* y seguida en *A. L. Arsuaga, Inc.*, y más recientemente en *Olazábal* v. *U. S. Fidelity, Etc.*, 103 D.P.R. 448 (1975).

■ En *Olazábal,* el dueño de la obra de construcción, a cuyo favor se había hecho la fianza, incumplió ciertas condiciones del contrato de construcción, el cual se había hecho formar parte del de fianza. ([3]) Posteriormente reclamó a la fiadora, y ésta se negó a responder. Planteó ante este Tribunal que quedó liberada de las obligaciones de la fianza por el incumplimiento de las condiciones pactadas. Resolvimos que el incumplimiento de un contrato de fianza por parte del acreedor libera a la fiadora si dicho incumplimiento le causó perjuicio sustancial a ésta. Entendimos que esto había sucedido en dicho caso, y que por tanto la fiadora quedó exonerada de responsabilidad. Nos basamos en la norma de interpretación liberal de las fianzas, y en la doctrina, de origen civilista, de que un incumplimiento del contrato por parte del acreedor libera a la fiadora si el mismo le causa perjuicio. ([4]) Dijimos, pág. 454:

---

([3]) Estas condiciones no se referían a un plazo para notificar reclamaciones, sino a la forma y cantidad de pagos periódicos al contratista por parte del dueño de la obra.

([4]) Esta doctrina surge del Art. 1751 de nuestro Código Civil (31 L.P.R.A. sec. 4956) el cual dispone lo siguiente:

"Como regla general, la fiadora quedará liberada de responsabilidad frente al acreedor únicamente hasta el grado en que las actuaciones de éste hayan perjudicado los intereses o derechos de aquélla. Ya no rige la antigua doctrina elaborada en los tiempos de fiadores gratuitos al efecto de que la menor violación del contrato por parte del dueño relevaba a la fiadora de responsabilidad *in toto*. Por ello hemos sostenido que: 'El principio de que un fiador es un favorito del derecho no es de aplicación propiamente en el caso de una compañía organizada con el propósito expreso de actuar como fiadora mediante compensación.' . . .

Conscientes como estamos de que de ordinario las fianzas ya no se prestan por mera liberalidad sino mediante paga, hemos abandonado la doctrina de interpretación restrictiva de las fianzas de construcción y en su lugar hemos adoptado una interpretación liberal."

No vemos qué perjuicio pueda haber sufrido Builders porque la demanda instada en su contra por Industrial Equipment se presentara 19 días después de vencido el año de haber cesado el fiado en el trabajo del proyecto, cuando ya tenía conocimiento, desde antes de empezar a discurrir el plazo del año, y atendió, durante el transcurso de dicho plazo, la reclamación de Industrial Equipment. Bajo la doctrina del perjuicio sustancial que reconocimos en *Olazábal* no puede quedar liberada de su obligación la compañía fiadora Builders.

 La jurisprudencia norteamericana se expresa en igual sentido sobre la teoría del perjuicio sustancial. Una serie de casos ha decidido que el incumplimiento del requisito de notificación de una reclamación a la fiadora, por sí solo, no libera a la fiadora de responsabilidad si dicho incumplimiento no le ha causado daño o perjuicio económico. Si la notificación de la reclamación se hace a la fiadora tardíamente, o en forma diferente a la pactada, se considera un cumplimiento sustancial de la condición pactada y no libera a la fiadora a menos

---

"Los fiadores, aunque sean solidarios, quedan libres de su obligación siempre que por algún hecho del acreedor no puedan quedar subrogados en los derechos, hipotecas y privilegios del mismo."

que ésta se haya perjudicado económicamente. *Carnival Cruise Lines* v. *Financial Indem. Co.* (Florida), 347 So.2d 825 (1977); *Winston Corp.* v. *Continental Casualty Co.*, 508 F.2d 1298 (1975) (caso de Georgia ante el tribunal federal por diversidad de ciudadanía); *Bayer & Mingolla Const. Co.* v. *Deschenes* (Massachusetts), 205 N.E.2d 208 (1965); *American Surety Co.* v. *Broadway Imp. & Inv. Co.* (Wyoming), 271 Pac. 19 (1928); *School Dist. No. 1* v. *Massachusetts Bonding & Ins. Co.* (Kansas), 142 Pac. 1077 (1914); *Bross* v. *McNicholas* (Oregon), 133 Pac. 782 (1913). La misma doctrina se ha aplicado cuando ha sido un tercero beneficiado por el contrato de fianza quien no ha cumplido con el requisito de notificación a la fiadora en la forma en que fue pactado. *Maule Industries Inc.* v. *Gaines Construction Co.* (Florida), 157 So.2d 835 (1963).

Todos los casos discutidos en el párrafo precedente se han basado en el principio de que una compañía fiadora no es un favorito del Derecho. Consideran que si ésta se lucra por prestar fianzas, dichos contratos deben ser interpretados en una forma liberal.

En *Caribe Lumber* v. *Inter-Am. Builders*, 101 D.P.R. 458 (1973), se presentó una situación de hechos parecida a la de autos, en cuanto envolvía el incumplimiento por parte de un tercero beneficiado del requisito de notificación pactado en la fianza. Este Tribunal determinó que la fiadora no respondía porque no se le notificó según pactado.

A pesar de esta semejanza en cuanto a hechos, el caso de *Caribe Lumber* no milita contra la solución que ahora adoptamos. En el contrato de fianza en *Caribe Lumber*, supra, Inter-American era la obligada principal, a su vez subcontratista; Southern Builders era la contratista; y American Surety era la fiadora. El lenguaje de la fianza la hacía extensiva a quienes suplieran materiales y mano de obra.

El contrato de fianza contenía la siguiente cláusula:

"(3) No podrá persona alguna iniciar pleito o acción bajo la presente:

(a) A menos que previamente haya notificado por escrito a cualesquiera dos de las siguientes:

A la principal (Inter-American Builders Inc.); a la acreedora (Southern Builders, Inc.); o a la fiadora (American Surety Company of New York); dentro de los noventa (90) días siguientes a la fecha en que el reclamante realizó el último trabajo o suplió los últimos materiales objeto de su reclamación."

La Caribe Lumber suplió materiales y mano de obra. Antes de iniciar acción judicial notificó a la Inter-American (la principal acreedora) dentro del plazo pactado para ello. Nunca notificó a la Southern Builders. Notificó su reclamación a la fiadora nueve días después de vencido el plazo pactado.

Para concluir que la fiadora quedaba liberada, este Tribunal empleó el examen del perjuicio que el incumplimiento del contrato por parte del reclamante le había causado. Determinamos que al no notificar a tiempo se impidió que la fiadora tomase medidas para su protección, por lo cual resultó perjudicada y por tanto, liberada de responsabilidad hacia el reclamante. Expresamos:

"No notificó [la demandante] a la Southern Builders, Inc., la contratista principal, que era la que podía tomar las medidas razonables para remediar la situación, y que, como se expresa en *Arzuaga & Santana, Inc.* v. *Ramos,* 100 D.P.R. 123 (1971), conociendo con tiempo lo adeudado por el subcontratista, podía retener de lo que todavía le adeudare por el trabajo realizado, lo suficiente para pagar al materialista, ya que la fiadora, por ser solidaria su responsabilidad, podía reclamarle a dicho contratista principal (Southern Builders, Inc.) lo pagado por la fiadora, conforme a lo dispuesto en el párrafo segundo del Art. 1721 del Código Civil de Puerto Rico, ed. 1930 (ed. Equity, 1962) (31 L.P.R.A. sec. 4871); en concordancia y armonía con lo dispuesto en el Art. 1090 del Código Civil de Puerto Rico (31 L.P.R.A. sec. 3101).

. . . . . . . . .

Y vino a notificarle a la fiadora cuando había transcurrido, por nueve (9) días, el término de noventa (90) días fijados en el contrato de fianza para efectuar dicha notificación. Era muy importante en este caso notificarle a la fiadora, dentro de dicho término, ya que no se le notificó al contratista principal, de que el fiado no estaba pagando sus cuentas pues es a través de esa notificación que el fiador llega a tener conocimiento de ese hecho; de manera que pudiera tomarse aquellas medidas oportunas y necesarias para protegerse a tiempo de la morosidad del fiado, antes de que su situación económica se deteriore y se convierta en insolvente utilizando los remedios que le conceden los Arts. 1737 y 1742 del Código Civil de Puerto Rico, ed. 1930 (ed. Equity, 1962) (31 L.P.R.A. secs. 4911 y 4916).'' (Págs. 473-474.)

La fiadora en el caso de autos no se vió en la posición desventajosa en que se halló la fiadora en *Caribe Lumber*, supra. Fue notificada de la deuda que tenía su fiado con la reclamante desde el 18 de abril de 1975. Tuvo amplia oportunidad para tomar las medidas necesarias para su protección.

Para concluir, es oportuno señalar que Builders no es en este caso un mero fiador, obligado a pagar por Contreras & Méndez lo que esta firma adeuda al suplidor de materiales. Recuérdese que Contreras & Méndez, deudor principal, no queda liberado frente a su acreedor materialista por el hecho de que exista una fianza. Y aquí Contreras & Méndez cedió sus derechos y acciones en el proyecto a Builders, "incluyendo equipo y materiales de construcción." En otras palabras, Builders adquirió, o pudo haber adquirido, en virtud de la cesión, el equipo y los materiales que Industrial Equipment había suplido al proyecto. Permitir que Builders los retenga sin pagar por ellos operaría un enriquecimiento injusto a su favor, en perjuicio del patrimonio de Industrial Equipment.

*Por los razonamientos aquí expuestos, se expedirá el auto de revisión solicitado, se revocará la sentencia parcial recurrida, y se dispondrá que se continúen ante el Tribunal a quo los trámites iniciados por la demandante recurrente para el cobro de la cantidad que le fuere adeudada.*

El Juez Asociado Señor Díaz Cruz disintió en opinión a la que se une el Juez Asociado Señor Rigau.

—O—

Opinión disidente del Juez Asociado Señor Díaz Cruz a la que se une el Juez Asociado Señor Rigau.

San Juan, Puerto Rico, a 19 de enero de 1979

La recurrente Industrial Equipment Corp. suplió materiales de construcción para la obra Playa Santa del Caribe que realizaba Contreras & Méndez Construction Company. La contratista obtuvo una fianza de ejecución y pago expedida por la demandada recurrida Builders Insurance Co. (1) que aseguraba el pago de jornales y materiales, de la cual forma parte una ditamento (*rider*) que en lo concerniente a este caso dice:

"... no suit, action or proceeding shall be had or maintained against Surety on this bond unless the same be brought or instituted within one (1) year after the date or [*sic*] which principal last performed work on the project in accordance with the Contract, or one (1) year after the date of any default by principal in the performance of the contract, whichever shall first occur."

Contreras & Méndez, contratista y a la vez principal en la fianza, cesó de trabajar en el proyecto el 29 de abril de 1975. La recurrente Industrial Equipment reclamó de la fiadora y cesionaria Builders Insurance el pago de un balance de $32,285.36 por concepto de equipo y material entregado e instalado en el proyecto, mas no presentó demanda iniciando la acción judicial hasta el 18 de mayo de 1976. Fundada en que ya había transcurrido el plazo de un año estipulado en la fianza y que por ser éste término de caducidad que no admite causa de interrupción por reclamación extrajudicial, la Sala

---

(1) El proyecto ha tendio un desarrollo azaroso. El contratista no pudo terminarlo y la fiadora que se hizo cargo, se halla actualmente bajo liquidación por el Comisionado de Seguros. (26 L.P.R.A. sec. 4007 y ss.)

de San Juan dictó sentencia sumaria parcial desestimando la demanda en lo que respecta a la fiadora Builders Insurance Co.

Notamos la breve tardanza de 19 días en el inicio de la acción civil y al recurso de revisión de la suplidora recurrente, dictamos la siguiente Resolución:

"Habiendo constancia en autos de la interrupción del término de un año por reclamaciones extrajudiciales de la recurrente suplidora de materiales, lo que sitúa su acción civil en tiempo de no atribuirse a dicho término calidad de caducidad, tenga la parte demandada y recurrida plazo hasta el 7 de abril, 1978 para mostrar causa por la que no deba revocarse la sentencia sumaria parcial dictada el 17 de enero, 1978 por el Tribunal Superior, Sala de San Juan, y ordenar la continuación de procedimientos compatibles."

La comparecencia de la recurrida, ahora representada por la Asociación de Garantía de Seguros Misceláneos como resultado de los procedimientos de liquidación por el Comisionado de Seguros (Ley Núm. 134 de 23 de julio de 1974 (26 L.P.R.A. sec. 3801 y ss.)), nos convence de la corrección de la sentencia sumaria recurrida, excepto en su determinación de temeridad.

En su solicitud de revisión la recurrente señala como errores del tribunal de instancia los siguientes:

1° que el aditamento (*rider*) de la fianza no obliga a los reclamantes de salarios y materiales impagados, teoría insostenible porque la fianza es un todo compuesto por la declaración principal que consigna la prestación y todos los demás anejos, suplementos y *riders* donde constan condiciones especiales del contrato. Tanto la fianza Núm. 72–1545 como el *rider* en que se adiciona como beneficiario a la entidad financiadora de la obra y se introduce el plazo de un año para promover la acción civil, aparecen otorgados con simultaneidad. (²)

---

(²) El 8 de septiembre de 1972.

2° que la sala de instancia calificó el plazo para radicar la acción como uno de caducidad y no de prescripción.

Ya en asunto de mayor trascendencia como lo es la acción civil filiatoria este Tribunal destacó con singular relieve el concepto de *ejercicio* de la acción en el estatuto o contrato, como elemento que identifica la caducidad. En *Ortiz Rivera* v. *Sucn. González Martínez*, 93 D.P.R. 562, 571, 599 (1966), sostuvimos la caducidad de tal acción descansando en el lenguaje del Art. 126 del Código Civil: "Las acciones para el reconocimiento de hijos naturales, *sólo podrán ejercitarse* en vida de los difuntos padres o un año después de su muerte." [3] La cláusula de plazo en la fianza, aquí transcrita, usa similar lenguaje, pues se traduce: "ningún pleito, acción o procedimiento podrá ejercitarse o sostenerse contra la fiadora en esta fianza a menos que los mismos sean incoados o presentados dentro de un (1) año a partir de la fecha en que el principal trabajó por última vez en el proyecto a tenor del contrato, o un (1) año después de la fecha de incumplimiento del contrato por el principal, cualesquiera de estos eventos que primero ocurra." "[E]n la caducidad pura se atiende sólo al hecho objetivo de la *falta de ejercicio* dentro del término prefijado", dice Castán, [4] y citando a Coviello dice que la

---

[3] Revocando en parte *sub silentio* a *Fuentes* v. *Tribunal de Distrito*, 73 D.P.R. 959, 978 (1952). Terminología análoga aparece en otros preceptos del Código Civil cuyos plazos se identifican como de caducidad, y no de prescripción: el Art. 117 ordena que "[l]a acción para impugnar la legitimidad del hijo *deberá ejercitarse* dentro de los tres meses. . . ."; el Art. 1385 dispone que "[l]a acción redhibitoria que se funda en los vicios o defectos de los animales, *deberá interponerse* dentro de cuarenta días . . . ."; el Art. 1388 provee al comprador de tales animales la opción entre desistir del contrato o reducir el precio, ". . . pero *deberá usar de ella* dentro del mismo término" señalado para el *ejercicio* de la acción redhibitoria. (Énfasis nuestro.) Espín Cánovas, *Derecho Civil Español*, Vol. 1, págs. 491–492, 6ta. ed. (1977).

[4] *Derecho Civil Español*, Tomo 1, Vol. 2, pág. 851, 10ma ed. (1963).

El Diccionario de Derecho Privado (Apéndice), pág. 178 y ss., ed. de 1960, ofrece la siguiente definición de caducidad por Castán Tobeñas: "una institución jurídica por la que, la ley o la voluntad de los particulares señalan un término fijo para la duración de un derecho, de tal modo que transcurrido ese término no puede ya ejercitarse."

finalidad de la decadencia o caducidad es fijar de antemano el tiempo durante el cual pueda un derecho ser *ejercitado* útilmente. La caducidad no es susceptible de interrupción y para evitarla, hay que *ejercitar*, en el plazo concedido, la acción correspondiente, cuya extinción se produce de modo *automático*, sin que tenga que ser impetrada por aquéllos a quienes beneficia. [5]

Cuando por ley o por voluntad de las partes se establece que un determinado acto, que representa la actuación de un derecho, *sea ejercitado* dentro de un tiempo dado, este término es el punto de partida de la extinción del derecho por caducidad. Cuando se otorga un tiempo determinado para el *ejercicio* del derecho, se está en presencia de un plazo de caducidad, pasado el cual el derecho deja de existir. *Ortiz Rivera* v. *Sucn. González*, supra, *Eisele* v. *Orcasitas*, 85 D.P.R. 89, 93 (1962). La finalidad de la prescripción es dar por extinguido un derecho que, por no haber sido ejercitado, se puede suponer abandonado por el titular; la de la decadencia es fijar de antemano el tiempo durante el cual puede un derecho ser ejercitado eficazmente. [6]

Las reclamaciones extrajudiciales de la recurrente ni suspendieron ni interrumpieron el término de caducidad de un año dispuesto en la fianza, porque el efecto extintivo del plazo es radical y automático. No es factor discriminante la naturaleza pública o privada de la obra, pues mientras la prescripción tiene siempre su origen en la Ley, la caducidad puede

---

[5] Sentencias del Tribunal Supremo de España de 22 mayo, 1965; 10 de enero de 1946; y 27 de mayo y 5 de julio de 1967, citadas por Puig Peña, *Compendio de Derecho Civil*, Tomo 1, pág. 693, 3ra. ed. (1976).

[6] *Ortiz Rivera*, supra, a la pág. 573, citando de Coviello y Castán. En *Srio. del Trabajo* v. *Tribunal Superior*, 91 D.P.R. 856 (1965) consideramos de caducidad el plazo para reclamar salarios establecido en el Art. 32 de la Ley de Salario Mínimo (29 L.P.R.A. sec. 246d) que usando lenguaje menos indicativo de caducidad que la cláusula de autos, ordena que "[p]or el transcurso de tres años *prescribirá* la acción . . . ." (énfasis nuestro) lo que motivó la enmienda introducida por Ley Núm. 106 de 6 de junio de 1967 (29 L.P.R.A. sec. 246d) declarando el plazo asequible a interrupción por gestión extrajudicial.

proceder de la convención de las partes o de la ley. Ya en *Caribe Lumber* v. *Inter-Am. Builders*, 101 D.P.R. 458, 460, 476 (1973), identificamos un plazo de caducidad de origen convencional en la notificación previa exigida por el texto de una fianza de pago.

El suplidor de materiales que se despreocupa por informarse en cuanto a hallarse o no su crédito protegido y cubierto por los términos de la fianza de ejecución y pago, (7) simplemente asume el riesgo que conlleva la falta de garantía. En el campo de los negocios, la garantía como la fianza, la hipoteca, la póliza de seguro, la firma de un solidario y otras, es exigencia de la iniciativa del acreedor a quien compete cerciorarse de su prestación y eficacia. Los tribunales no pueden mejorar la garantía que aceptó el acreedor, y cuando se trata de fianzas y pólizas de seguro la firme doctrina liberal que preconiza una interpretación favorable al beneficiario no puede extenderse al punto de reescribir la póliza o la fianza imponiendo obligaciones que nunca asumió el fiador o alterando condiciones básicas insertas en el texto del documento.

3° que erró la sala de instancia al estimar que la parte demandante y recurrente incurrió en temeridad por lo que le impuso el pago de $500 de honorarios a la parte demandante. Considerando que esta institución de la caducidad trae un desarrollo incierto aún desde el Tribunal Supremo de España; (8) que Santamaría reconoce que en determinados casos es difícil establecer una distinción neta entre caducidad y prescripción; que Enneccerus a su vez ha dicho: en puridad, la técnica imprecisa de nuestro Código Civil, y aún de nuestra

---

(7) No se trata de un suplidor que hizo negocios en tinieblas. El párrafo 2° de la declaración jurada de su Presidente, en oposición a la moción de sentencia sumaria, dice:

"2. Que las relaciones comerciales que llevó con Contreras y Méndez Construction Corp. se basaron en las relaciones de amistad y en las fianzas de Pago y Ejecución que ésta le mostró, que habían sido expedidas por la demandada."

(8) Castán, *Derecho Civil Español*, Tomo 1°, Vol. 2°, pág. 854, 10ma. ed. (1963).

doctrina científica no permiten trazar con seguridad el deslinde entre los casos de prescripción y los de caducidad; y que Bassari reitera que el criterio diferencial entre caducidad y prescripción "no resulta muy claro"; ([9]) que esta cuestión de fianza fue resuelta en lo que concierne a la Ley de Contratos de Obras Públicas (22 L.P.R.A. sec. 55) en *Jiménez y Salellas, Inc.* v. *Maryland Cas. Co.*, 92 D.P.R. 207, 211 (1965), donde dijimos que "[e]n ausencia de esa disposición [de ley] tal vez tendría mérito el planteamiento . . . pero de nada vale argumentar contra la letra expresa de la ley" sin que nos pronunciáramos respecto a la presencia de la caducidad en la contratación privada por no ser entonces cuestión a decidir; y finalmente, que el pleito tuvo un breve curso procesal, terminando por sentencia sumaria, estimamos que debe liberarse a la parte demandante de la sanción reservada para litigantes temerarios.

La mayoría no ha sabido percibir la distinción entre las instituciones de Derecho Civil que son la prescripción y caducidad. Con hechos menos definidos que los que presenta la cláusula en el contrato de fianza la mayoría dio su voto al Juez Presidente en *Rivera* v. *Las Vegas Dev. Co., Inc.*, 107 D.P.R. 384 (1978), clasificando como de caducidad el término en la acción decenal y acaban de confirmar tal criterio votando la sentencia en *Báez Pinedo* v. *Vega*, (R-78-183—27 de diciembre de 1978) y la opinión en *Antonio Carro, Inc.* v. *Jura Const., Inc.*, 107 D.P.R. 808 (1978). Es el mismo criterio jurídico sostenido por este Tribunal desde *Jiménez y Salellas, Inc.* v. *Maryland Cas. Co.*, 92 D.P.R. 207 (Rigau—1965).

---

([9]) Estas autorizadas opiniones están recogidas en el documentado estudio del Juez Belaval en *Ortiz Rivera* v. *Sucn. González Martínez*, 93 D.P.R. 562, 570-71 (1966). Garcerán de Vall califica la caducidad como "una de las cuestiones más arduas y obscuras del derecho", y De Diego escribe que "las fronteras entre la caducidad y la prescripción son sumamente borrosas." *Jiménez y Salellas, Inc.* v. *Maryland Cas. Co.*, 92 D.P.R. 207, 212-13 (1965).

Inesperadamente la mayoría adopta un curso de revocación de *Las Vegas Development* (Trías Monge), *Jiménez y Salellas* (Rigau), *Báez Pinedo, y Carro, Inc.* v. *Jura Construction, Inc.* (Dávila), supra. Todos son precedentes jurídicamente fundados que debemos mantener como doctrina del Tribunal. La estabilidad y certeza de la jurisprudencia en su aspiración a ser fuente de derecho, guía de la comunidad jurídica y de los contratantes, inevitablemente sufre con este flujo y reflujo de la marea decisional.

Ratificaría nuestra jurisprudencia y confirmaría la sentencia recurrida.