# United States Court of Appeals
## For the First Circuit

No. 11-1614

IN RE REDONDO CONSTRUCTION CORPORATION,

Debtor.

_____

REDONDO CONSTRUCTION CORPORATION,

Claimant, Appellee,

v.

PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY,

Respondent, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lynch, Chief Judge,
Selya and Lipez, Circuit Judges.

Raúl Castellanos-Malavé, with whom Development & Construction
Law Group, LLC was on brief, for appellant.
  Charles A. Cuprill-Hernandez, with whom Law Offices Charles A.
Cuprill, P.S.C. was on brief, for appellee.

May 11, 2012

**SELYA, Circuit Judge.** This appeal consolidates three adversary proceedings that were tried in the bankruptcy court. Each proceeding involves a discrete set of claims by the debtor, a construction company that has fallen upon hard times, against a government agency, the Puerto Rico Highway and Transportation Authority (the Authority). The bankruptcy court awarded the debtor a total of nearly $12,000,000 in damages, plus prejudgment interest. On intermediate appeal, the district court deemed the Authority's claims of error unpreserved and affirmed the judgment in all respects. After careful consideration, we find that only one of the Authority's claims of error is forfeited. Proceeding to the merits, we reject some of the Authority's other contentions but vacate and remand for a recalculation of home-office overhead damages and reconsideration of the issue of prejudgment interest.

## I.  BACKGROUND

The bankruptcy court (Carlo, J.) wrote a comprehensive rescript describing the factual background of these proceedings, see Redondo Constr. Corp. v. P.R. Highway & Transp. Auth. (In re Redondo Constr. Corp.) (Redondo I), 411 B.R. 89 (Bankr. D.P.R. 2009), and we assume the reader's familiarity with that exegesis. Our factual account is correspondingly brief.

During the early 1990s, the debtor, Redondo Construction Corporation, entered into three separate construction contracts with the Authority. Each contract required the debtor to undertake

-2-

work on a particular project: one project entailed the construction of a bridge and access road (the Patillas project); another entailed the replacement of a different bridge (the Dorado-Toa Alta project); and the third entailed highway improvements (the Mayagüez project). The Authority spelled out the design plans, specifications, and anticipated site conditions for each project in the contract documents. The documents also prescribed procedures for implementing variances and adding extra work.

In the contract documents, the Authority retained the right to modify the plans and specifications. To the extent that the Authority chose to exercise this power, however, the debtor had the right to seek extra compensation (as long as the changes were material). The debtor also could lay claim to extra compensation in the event of certain contingencies requiring substantial additional work (say, unforeseen site conditions, shortcomings in the specifications, or other circumstances beyond its control). Its right to such additional compensation was, of course, subject to conditions delineated in the contract documents.

Each of the three projects encountered unanticipated problems, including unforeseen site conditions and flawed design plans. The need to take corrective actions substantially delayed completion of the projects, forced the debtor to perform extra work, and ratcheted up the costs. By way of example, the Mayagüez project ran nearly three years past schedule due to necessary

modifications and change orders requested by the Authority. Despite the plethora of problems, however, the record contains no evidence that the work on any of the projects was ever suspended or that the debtor was placed on standby for any period of time.

The debtor eventually navigated this obstacle course and completed all three of the projects. Not surprisingly, it submitted claims for additional amounts owed under the contracts. These included claims for monies allegedly owed by the Authority for services rendered by two subcontractors who toiled on the Mayagüez project (Continental Lord, Inc. and Remodelco, Inc.).

While the claims were still unresolved, the debtor filed for bankruptcy protection. In the Chapter 11 proceedings, 11 U.S.C. §§ 1101-1174, the debtor served the Authority with a trio of adversary complaints. Each complaint concerned amounts allegedly owed with respect to a particular project.

The complaints were tried before the bankruptcy court. See 28 U.S.C. § 157(a). With the consent of the parties, the court issued a final judgment in the matters. See Sheridan v. Michels (In re Sheridan), 362 F.3d 96, 99-100 (1st Cir. 2004). The court found that each of the three projects experienced delays and cost overruns for which the Authority was responsible. See Redondo I, 411 B.R. at 95-113. It concluded, among other things, that the physical conditions at the construction sites differed materially from those described by the Authority in the contract documents and

-4-

that some specifications and design elements were flawed.  See id.
In the end, the court awarded the debtor a total of $12,028,311.92
plus prejudgment interest at 6.5% per annum.  After the Authority
moved to alter or amend the judgment, see Fed. R. Civ. P. 59(e),
and the debtor cross-moved to correct clerical errors therein, see
Fed. R. Civ. P. 60(a), the court reduced the amount of damages by
$69,792.26 but otherwise left the judgment intact.  See Redondo
Constr. Corp. v. P.R. Highway & Transp. Auth. (In re Redondo
Constr. Corp.), 424 B.R. 29 (Bankr. D.P.R. 2010).[1]

The Authority sought first-tier review of the bankruptcy
court's decision in the district court.  See 28 U.S.C. § 158(a).
The district court scrutinized the Authority's assignments of
error, deemed them unpreserved, and affirmed the judgment without
any substantive analysis of the Authority's assertions.  This
timely second-tier appeal ensued.

The appeal outlines four claims of error.  First, the
Authority argues that the debtor waived any claims related to the
Mayagüez project by failing to furnish timely written notice of its
intention to seek additional recompense.  Second, it argues that
the court incorrectly awarded the debtor extended overhead damages
and, in the alternative, miscalculated those damages.  Third, it
argues that the debtor lacked standing to assert subcontractor

---

[1] Due to Judge Carlo's retirement, Judge Lamoutte ruled on both post-judgment motions.

-5-

claims. Finally, it argues that the court erred in awarding prejudgment interest.

## II. ANALYSIS

We afford the final decision of a bankruptcy court plenary review without formal deference to the district court's intermediate affirmance. Berliner v. Pappalardo (In re Sullivan), ___ F.3d ___, ___ (1st Cir. 2012) [No. 11-1830, slip. op. at 3]; City Sanitation, LLC v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.), 656 F.3d 82, 87 (1st Cir. 2011). The bankruptcy court's legal conclusions engender de novo review, but its factual findings are examined only for clear error. Donarumo v. Furlong (In re Furlong), 660 F.3d 81, 86 (1st Cir. 2011).

## A. Forfeiture.

There is a threshold question that we must answer before addressing the Authority's serial claims of error. The debtor seeks to pretermit this appeal on the ground that all of the Authority's claims are unpreserved.

It is black-letter law that arguments not presented to the trial court are, with rare exceptions, forfeit on appeal. See Dávila v. Corporación de P.R. para la Difusión Pública, 498 F.3d 9, 14 n.2 (1st Cir. 2007); United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1096 (1st Cir. 1992). We proceed to test, claim by claim, the incidence of forfeiture in this case.

-6-

We begin with the Authority's claim that the debtor lacked standing to include the work of certain subcontractors in its accounting. Although the Authority made a different lack-of-standing claim in the bankruptcy proceeding, the record unmistakably reveals that the particular claim that it now advances was raised for the first time before the district court; it was not raised in any shape or form before the bankruptcy court. It is, therefore, not preserved.

This conclusion is easily illustrated. The lack-of-standing argument pressed by the Authority on appeal relies on the doctrine enunciated in <u>Severin</u> v. <u>United States</u>, 99 Ct. Cl. 435 (Ct. Cl. 1943). Under the <u>Severin</u> doctrine, a contractor is barred from bringing claims on behalf of a subcontractor if the owner can prove that the contractor is not liable to the subcontractor for the specified amounts. <u>See</u> <u>Scott Timber Co.</u> v. <u>United States</u>, 97 Fed. Cl. 685, 695 (Fed. Cl. 2011). The Authority never made a <u>Severin</u>-based argument in the bankruptcy court.

In an attempt to confess and avoid, the Authority suggests that it has not forfeited its challenge to the subcontractor-based damages because the challenge is purely legal in nature (<u>see</u> Appellant's Br. at 3). We reject this suggestion out of hand. Law-based arguments, like fact-based arguments, normally must be raised in the trial court, and (with possible exceptions not relevant here) failure to do so results in

forfeiture. See, e.g., Martinez v. Colon, 54 F.3d 980, 987 (1st Cir. 1995) (stating that legal theories not raised before trial court are subject to forfeiture).

To the extent that the Authority invites us to overlook the forfeiture of its Severin argument to avoid "a miscarriage of justice," Appellant's Br. at 4, we decline its invitation. "[T]he Severin doctrine is an affirmative defense that must be raised by [the] defendant." Northrop Grumman Computing Sys., Inc. v. United States, 99 Fed. Cl. 651, 659 (Fed. Cl. 2011). Our precedent is clear that a trial court normally commits no error — let alone plain error — when it fails to consider sua sponte an affirmative defense not seasonably raised at trial. See, e.g., Dimarco-Zappa v. Cabanillas, 238 F.3d 25, 35 (1st Cir. 2001); Amcel Corp. v. Int'l Exec. Sales, Inc., 170 F.3d 32, 35 (1st Cir. 1999).

We do not agree with the debtor that any of the Authority's other claims are unpreserved. First, the Authority timely raised before the bankruptcy court its argument that the debtor had sacrificed any entitlement to extra compensation for the Mayagüez project by failing to meet the contract's written notice requirement. The Authority advanced this claim in its pre-trial memorandum and reiterated it in its post-trial brief.[2] Similarly, the Authority's post-trial brief argued at length that the debtor

_____

[2] The bankruptcy court directed the parties to file post-trial briefs in lieu of closing arguments.

-8-

had not proven an entitlement to extended overhead damages.  The fact that the Authority did not raise this issue prior to trial is beside the point; litigants are not expected to be clairvoyant, and the Authority could not have known prior to the close of testimony that the debtor would fail to prove an element of its asserted damages.

This leaves the issue of prejudgment interest.  We think that the Authority preserved this issue by spelling out its position in its motion to alter or amend the judgment.  While arguments presented for the first time in a Rule 59(e) motion ordinarily are deemed forfeited, see CMM Cable Rep, Inc. v. Ocean Coast Props., Inc., 97 F.3d 1504, 1526 (1st Cir. 1996), the grant or denial of prejudgment interest is an exception to this general rule.  Indeed, we regularly have recognized that Rule 59(e) is an appropriate vehicle for the resolution of disputes about prejudgment interest.  See, e.g., Bos. Gas Co. v. Century Indem. Co., 529 F.3d 8, 21 (1st Cir. 2008); Crowe v. Bolduc, 365 F.3d 86, 92-93 (1st Cir. 2004).  This practice makes sense; elsewise parties would be required to put the cart before the horse and argue about prejudgment interest before the underlying issues of liability and damages have been resolved.

Having answered the threshold question, we turn now to the merits of the Authority's preserved claims of error.

## B.  **Notice.**

The Authority argues that the debtor waived its right to additional remuneration for the Mayagüez project.  In support, the Authority invokes the so-called Blue Book — the standard specifications for road and bridge construction that the parties acknowledge are incorporated in all of the contracts sub judice. Section 105.17 of the Blue Book states in relevant part:

> a.  When the Contractor deems that extra compensation is due him for work or materials not clearly covered in the contract or not ordered by the [Authority's resident] Engineer as extra work, . . . the Contractor shall notify the [resident] Engineer in writing of his intention to make claim for such extra compensation within one working day after he begins the work on which he bases the claim. If such notification is not given, and the [resident] Engineer is not afforded proper facilities by the Contractor for keeping strict account of actual cost as required, then the Contractor hereby agrees to waive any claim for such extra compensation.

With respect to the Mayagüez project, the Authority insists that the debtor submitted no written claims for additional compensation until approximately six-and-a-half years after completion of the work.

The bankruptcy court apparently agreed that the debtor had neglected to provide the written notice described in the Blue Book.  The court found, however, that the Authority had received timely actual notice: the debtor had informed the Authority both of the incipient problems and of its intention to seek additional

compensation in a prolonged series of daily conversations and weekly meetings. See, e.g., Redondo I, 411 B.R. at 95, 99-103, 111. The court also found that the Authority had issued work orders and/or change orders authorizing the further work. See, e.g., id. at 97, 100, 102. These factual findings are fully supported by the record. Because they are not clearly erroneous, we must honor them. See United States v. Lugo Guerrero, 524 F.3d 5, 11 n.1 (1st Cir. 2008); Boroff v. Tully (In re Tully), 818 F.2d 106, 108 (1st Cir. 1987).

The bankruptcy court's factual findings eviscerate the Authority's notice defense. The better rule — and therefore the rule that we think the Puerto Rico Supreme Court would adopt — is that strict conformity with a contract's written notice provision is not required as long as the counterparty receives substantially the same information through timely actual notice and suffers no prejudice from the non-conformity. See 1 Richard K. Allen & Stanley A. Martin, Construction Law Handbook 780 (2d ed. 2009); see, e.g., Brechan Enters., Inc. v. United States, 12 Cl. Ct. 545, 550 (Cl. Ct. 1987) (explaining that, in a construction contract case, "[t]he requirement of a writing has been waived where the Government in fact has knowledge of the conditions and difficulties encountered by the contractor and where no prejudice was shown to have resulted from lack of timely written notice"); Aetna Cas. & Sur. Co. v. Murphy, 538 A.2d 219, 223 (Conn. 1988); Iskalo Electric

Tower LLC v. Stantec Consulting Servs., Inc., 916 N.Y.S.2d 373, 375 (N.Y. App. Div. 2010); Bloom Twp. High Sch. v. Ill. Commerce Comm'n, 722 N.E.2d 676, 689 (Ill. App. Ct. 1999); cf. Indus. Equip. Corp. v. Builders Ins. Co., 8 P.R. Offic. Trans. 296, 305 (P.R. 1979) ("If the notice of default is served untimely upon the surety, or in a manner different to that agreed upon, it is considered a substantial compliance with the condition agreed upon, and does not release the surety unless it has been economically prejudiced.").

In the case at hand, the bankruptcy court determined that the Authority had received timely actual notice of the emergent problems, the debtor's willingness to do extra work to cure them, and the debtor's intent to seek additional remuneration therefor. The Authority has not shown that it was in any way prejudiced by its receipt of oral, as opposed to written, notice.[3] Accordingly, we hold that the debtor's substantial compliance with the contractual notice requirements neutralizes its failure to comply literally with those requirements. Under this same reasoning, there was no waiver of the subcontractor-based claims because the

---

[3] The bankruptcy court found that the Authority, without protest of any kind, authorized the performance of extra work. This finding strongly supports a conclusion that the Authority was not prejudiced. Cf. S. Leo Harmonay, Inc. v. Binks Mfg. Co., 597 F. Supp. 1014, 1032 (S.D.N.Y. 1984) ("[W]hen a party knowingly receives and accepts the benefits of extra work outside the scope of a construction contract orally directed by himself and his agents, such conduct constitutes a waiver of the [written-notice] requirement.").

bankruptcy court supportably determined that the Authority had timely actual notice of those claims as well. See Redondo I, 411 B.R. at 100, 102-03.

### C. **Extended Overhead Damages**.

The Authority next asseverates that the bankruptcy court erroneously awarded the debtor extended overhead damages for the three projects.[4] Extended overhead damages compensate a contractor for unabsorbed home-office expenses that accrue during a delay caused by the owner. See Interstate Gen. Gov't Contractors, Inc. v. West, 12 F.3d 1053, 1060 (Fed. Cir. 1993); K-Con Bldg. Sys., Inc. v. United States, 97 Fed. Cl. 41, 54 (Fed. Cl. 2011). The rationale underlying this species of damages is straightforward: when completion of a project is delayed, the contractor continues to incur home-office costs during the delay period, and extended overhead damages offset those costs when the delay is caused by the owner. See Kanaq'Iq Constr. Co. v. United States, 51 Fed. Cl. 38, 48 (Fed. Cl. 2001).

There are at least two methods of calculating extended overhead damages. When a project's completion is delayed due to necessary but unanticipated work for which the contractor is entitled to compensation, extended overhead is usually calculated

---

[4] The Authority challenges only the award of home-office overhead, not the award of job-site overhead. Consequently, all references herein to extended overhead damages should be read as referring exclusively to home-office overhead.

as a percentage of the direct costs of the additional work.  <u>See</u> <u>C.B.C. Enters., Inc.</u> v. <u>United States</u>, 978 F.2d 669, 675 (Fed. Cir. 1992).   This percentage-of-direct-costs approach comports with standard practice in the construction industry under which a contractor normally charges an owner a percentage of a project's direct costs to cover its overhead.   <u>See</u> <u>id.</u> at 670; <u>Aniero</u> <u>Concrete Co.</u> v. <u>N.Y.C. Constr. Auth.</u>, 308 F. Supp. 2d 164, 209 (S.D.N.Y. 2003); Glen M. Darbyshire, Note, <u>Home Office Overhead as</u> <u>Damages for Construction Delays</u>, 17 Ga. L. Rev. 761, 761 (1983).

Withal, there are frequently project delays that do not arise from a need to perform extra (compensable) work.  In such an instance, the percentage-of-direct-costs approach is untenable. For example, if an owner causes a total work stoppage, there will be no additional direct costs (after all, no work will be ongoing), yet home-office overhead expenses will continue to accrue. Applying the percentage-of-direct-costs approach in those circumstances would, therefore, deny the contractor any overhead damages for the delay period.  <u>See</u> <u>Altmayer</u> v. <u>Johnson</u>, 79 F.3d 1129, 1133 (Fed. Cir. 1996).  To safeguard against this obvious inequity, courts confronted with such a situation have used the <u>Eichleay</u> formula to compute the magnitude of extended overhead damages. <u>See</u> <u>George Hyman Constr. Co.</u> v. <u>Wash. Metro. Area Transit</u> <u>Auth.</u>, 816 F.2d 753, 759 (D.C. Cir. 1987); <u>Eichleay Corp.</u>, ASBCA No. 5183, 60-2 BCA ¶ 2688, 1960 WL 538 (1960).  This formula calls

-14-

for multiplying the average daily overhead costs allocable to a project by the number of days that the project is delayed.  See C.B.C. Enters., 978 F.2d at 673.

In the case at hand, the bankruptcy court employed Eichleay to calculate the debtor's extended overhead damages.  See Redondo I, 411 B.R. at 95, 108.  But the court mixed apples and oranges; it used Eichleay across the board even though it found that at least some of the project delays were attributable to extra work for which the debtor was compensated.  See, e.g., id. at 95, 97, 104-05.  For those delays, extended overhead should have been awarded as a percentage of the direct costs associated with the projects' change orders and extra work orders.  See C.B.C. Enters., 978 F.2d at 675 ("[I]t is inappropriate to use the Eichleay formula to calculate home office overhead for contract extensions because adequate compensation for overhead expenses may usually be calculated more precisely using a fixed percentage formula.").

The bankruptcy court gave no reason for eschewing the conventional percentage-of-direct-costs calculation as a measure of overhead damages in those instances, and no compelling reason is apparent on the face of the record.  Without more precise findings or a better explanation, this portion of the awarded damages cannot be allowed to stand.  Accordingly, we vacate the awards of Eichleay-based overhead damages and remand to permit recalculation of those awards using the percentage-of-direct-costs method where

-15-

applicable and using <u>Eichleay</u> only in connection with work stoppages or delays (if any) of the type described above.

The direct costs, of course, are a matter of proof. The applicable percentage should be that used in connection with the original contracts (presumably specified in the contract documents).

We add a caveat. It is unclear from the record whether all of the project delays were the result of paid extra work. On remand, the bankruptcy court is free to determine whether the debtor sustained uncompensated periods of delay and, if so, whether <u>Eichleay</u> damages are appropriate for any such periods. In resolving this issue, the court should address the Authority's argument that Federal Circuit precedent bars <u>Eichleay</u> damages here because work on the three projects was never fully suspended.[5] <u>See</u> <u>P.J. Dick Inc.</u> v. <u>Principi</u>, 324 F.3d 1364, 1371 (Fed. Cir. 2003).

## D.  **Prejudgment Interest**.

In its post-trial brief, the debtor sought prejudgment interest on the basis that 41 U.S.C. § 7109(a)(1) applies to this case because each of the three projects was partially financed by federal funds. In the alternative, it contended that prejudgment

---

[5] In this appeal, both parties have argued the case in terms of Federal Circuit precedent, and we think that it is fair to hold them to that choice. This court has not independently addressed either the proper scope of <u>Eichleay</u> or any possible questions about its treatment by the Federal Circuit. We leave those areas of inquiry open.

interest was appropriate under Puerto Rico Rule of Civil Procedure 44.3(b) because the Authority had acted "rashly" in the course of the litigation. See P.R. Laws Ann. tit. 32, app. III, R. 44.3(b). The bankruptcy court, without elaborating its reasoning, awarded prejudgment interest on all damages at the rate of 6.5% per annum.

When state-law claims (such as the contract claims at issue here) are adjudicated by a federal court, prejudgment interest is normally a matter of state law.[6] See Freeman v. Package Mach. Co., 865 F.2d 1331, 1345 (1st Cir. 1988). This case involves disputes between parties based in Puerto Rico over contracts executed and performed there. Those disputes were litigated in Puerto Rico, and the contracts at issue contain Puerto Rico choice-of-law provisions. We must therefore look to the law of Puerto Rico for the substantive rules of decision anent this contract case (and thus for the rule of decision concerning prejudgment interest). See Crowe, 365 F.3d at 90.

Of course, the parties were free under Puerto Rico law to adopt a particular measure of prejudgment interest. See P.R. Laws Ann. tit. 31, § 3372 ("The contracting parties may make the agreement and establish the clauses and conditions which they may deem advisable, provided they are not in contravention of law,

---

[6] For this purpose, Puerto Rico is the functional equivalent of a state. See, e.g., Fajardo Shopping Ctr., S.E. v. Sun Alliance Ins. Co. of P.R., Inc., 167 F.3d 1, 14 (1st Cir. 1999).

-17-

morals, or public order."). But we find no evidence that they did so.

The debtor resists this conclusion. In marshaling its resistance, it points to paragraph 107.05 of the Blue Book, which states:

> When the United States government participates in the cost of the work covered by the contract, the work shall be under the supervision of the Authority but subject to the inspection of the appropriate Federal agency and in accordance with the applicable Federal statutes and rules and regulations made pursuant thereto.

The debtor suggests that this language manifests the parties' shared intent to incorporate into their contracts the same rule of prejudgment interest that applies to contracts in which the federal government is a party. See 41 U.S.C. § 7109(a)(1).

This is too much of a stretch. Section 7109(a)(1) applies only in instances in which the federal government itself is a party. See id. § 7102(a). The federal government was not a party to any of the contracts at issue here, and paragraph 107.05 cannot reasonably be read to bring those contracts within the reach of the federal statute.

The language upon which the debtor relies requires it to ensure that its work complies with federal construction standards and regulations. There is no hint of any intent to incorporate a federal prejudgment interest statute that, by its terms, applies only to the federal government. Where, as here, "the terms of a

-18-

contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed."  P.R. Laws Ann. tit. 31, § 3471.

This brings us back to Puerto Rico prejudgment interest rules.  Before the bankruptcy court, the debtor urged in the alternative that it was entitled to prejudgment interest under Rule 44.3(b) of the Puerto Rico Rules of Civil Procedure.  But this rule is plainly inapposite and could not have provided a basis for the bankruptcy court's award of prejudgment interest: by its terms, Rule 44.3(b) does not apply when the defendant is either the Commonwealth of Puerto Rico or one of its agencies.

At oral argument in this court and in a post-argument letter submitted pursuant to Federal Rule of Appellate Procedure 28(j), the debtor for the first time proposed two other possible bases for prejudgment interest.  See P.R. Laws Ann. tit. 31, §§ 3025, 4591.  Neither of these statutes mentions prejudgment interest as such.  Moreover, neither of them was cited to the bankruptcy court, and the debtor has offered no plausible reason to believe that the court awarded prejudgment interest under their aegis.

The upshot is that uncertainty surrounds the debtor's putative entitlement to prejudgment interest, the source (if any) of that entitlement, the rate of interest (if any) that should be used, and the proper prejudgment period.  Consequently, we have no

-19-

principled choice but to remand this case to the district court with instructions to vacate the award of prejudgment interest and return the case to the bankruptcy court for a determination of whether prejudgment interest is appropriate and, if so, at what rate and for what periods.  We take no view as to the outcome of this further inquiry.

## III.  CONCLUSION

We need go no further.[7]  For the reasons elucidated above, we affirm the judgment in all respects save for (i) the calculation of extended overhead damages and (ii) the award of prejudgment interest; vacate the district court's judgment to the extent necessary to allow for resolution of these items; and remand for further proceedings consistent with this opinion.  One-half costs shall be taxed in favor of the debtor.

**So Ordered.**

---

[7] The Authority, which took a shotgun approach to this appeal, has made a number of other claims.  Without exception, these claims are unaccompanied by any developed argumentation.  Consequently, we deem them abandoned.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).